**Milo James SCHANCK, Appellant,**

v.

**Norma Jean SCHANCK, Appellee.**

No. S–837.

Supreme Court of Alaska.

April 4, 1986.

Rehearing Granted in Part and Opinion Amended June 26, 1986.

William T. Ford, Anchorage, for appellant.

Alan R. Hartig, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON, and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal concerns a divorce decree in which the superior court awarded 74 percent of the marital assets to Norma Schanck and 26 percent to James Schanck. The husband advances three principal specifications of error in this appeal. First James disputes several of the items the superior court included in the category of marital assets on the ground that he earned them after his wife filed for divorce. Second, he claims that the superior court's property division gave Norma a larger share of the marital assets than was warranted under the relevant facts and governing law. Finally, he claims that the award of rehabilitative alimony was improper in that Norma had already reentered the job market at the time of trial.

## FACTS.

Neither party had significant assets when they were married in 1960. James had been recently discharged from the Army, and Norma worked as a registered nurse. In the course of their marriage, the Schancks adopted two children, and a third child was born of the marriage. Norma assumed the tasks of running the household and raising the children. James was highly successful in his work in oil pipeline operations, which brought the family to Alaska in 1974.

The marriage entered a difficult phase in 1979. A marriage counselor ultimately advised a divorce, and the couple embarked on a trial separation in April, 1983. Norma filed for divorce on June 6, 1983. Between the time of the separation and the divorce trial in October, 1984 the couple shared custody of their children, and James accounted for the principal support of both households. During this same period, Norma earned her recertification as a nurse,

and found a full-time position as such. At the time of trial, James was earning approximately $84,000 a year and Norma was making about $17,000. The value of the parties' marital assets at the time of trial totaled approximately $275,000.

Noting the large discrepancy in their post-separation incomes, and the unlikelihood of Norma's significantly improving her annual income, the superior court concluded that she should receive the larger share of the marital assets. The superior court determined that Norma should receive approximately 74% of the marital assets, with a value totaling $206,744, including the equity in the family home, and some income-producing stock. James received 26% of the marital assets, totaling $70,403. He also was required to pay Norma $700 a month in rehabilitative alimony for a period of eighteen months, for a total of $12,600.

## POST-SEPARATION EARNINGS.

The division of property in a divorce action is controlled by AS 25.24.160(4),[1] which states in relevant part that the trial court may divide the parties' property, "whether joint or separate, acquired only during coverture, in the manner as may be just," under a balancing of the equities approach. The words "acquired only during coverture" were added by amendment in 1968, indicating that, in general, it is only property created by the enterprise of marriage that should be subject to division.[2]

The rule that has evolved in Alaska for dividing assets acquired after a separation resulting in a divorce is based on the source of the payment with which those assets are acquired. In a case where the parties were separated for four years prior to their divorce, we affirmed the superior court's inclusion of assets accumulated during that period as property subject to division. *Bussell v. Bussell*, 623 P.2d 1221,

1. Formerly AS 25.24.160(6), this provision was renumbered "(4)" by amendment effective October 1, 1985, am. § 3 ch. 40 SLA 1985.

2. Am. § 5 ch. 160 SLA 1968. This provision also provides that the court may invade the property of either spouse acquired before mar-

riage when the balancing of the equities between the parties requires it.

While much case law has been devoted to pre-coverture assets, the question of when coverture ends is of relatively recent interest. *Cf.*, *Burrell v. Burrell*, 537 P.2d 1 (Alaska 1975); *Moore v. Moore*, 499 P.2d 300 (Alaska 1972).

1223 (Alaska 1981).[3] We held that even if we were to apply the doctrine of "equitable divorce," there was sufficient evidence to uphold the superior court's finding that the parties did not consider the marriage ended when they separated. *Id.* at 1223. We also stated that since a significant portion of the expense involved in accumulating the post-separation property was paid for out of pre-separation assets, it was not unjust that the property be divided between the spouses. *Id.* at 1223 n. 3.

We elaborated on this rule in *Hunt v. Hunt,* 698 P.2d 1168 (Alaska 1985),[4] where there was a seven-month period between the separation and the divorce. Rather than laying down a rule to determine precisely when coverture had come to an end, we held that property accumulated during the period between separation and divorce should be divided into two categories: 1) property acquired with assets which, had they not been used in such acquisition, would have been subject to division, and 2) property acquired with assets, such as post-separation income, which, had they not been used in such acquisition, would not have been subject to division. *Id.* at 1171. Property in the first category would be subject to division, while property in the second category would not. Under this approach, we held it was not an abuse of discretion for the superior court to exclude the value of real estate the husband purchased with loans from a close corporation that was marital property. Since the loans were made after the parties separated, and therefore the wife would not be liable for them, the buildings for which they provided the down payment were properly excluded as being acquired with assets which would not be the subject of property division. *Id.* at 1172.

In *Hunt,* we also found that the superior court did not abuse its discretion in excluding from marital property personalty in the husband's new residence, despite a lack of evidence as to the precise source of funds for these purchases, "absent any evidence that [the husband] invaded property which should have been divided." *Id.* at 1172.[5] Finally, we concluded that valuing the husband's retirement benefits at the time of separation rather than at the time of divorce was not an abuse of discretion. *Id.* at 1172.

These cases provide a general framework for the division of post-separation assets. As a general rule, we hold that property accumulated with income earned after a final separation that is intended to, and does in fact, lead to a divorce is excluded from the category of marital property, as long as it is obtained without the invasion of any pre-separation marital asset.[6] We decline to specify, as a matter of law, that the effective date when such earnings become severable from marital property is at separation or at filing for divorce. Each case must be judged on its facts to determine when the marriage has terminated as a joint enterprise. In the instant case, we accept James' use of the date on which Norma filed for divorce as a reasonable cut-off point for this purpose.[7]

3. This marriage lasted eighteen years. The wife brought $70,000 to the marriage. At the time of divorce, the marital property was valued at $1.2 million, and the overall property division was approximately equal.

4. This marriage lasted 16 years. Neither party brought significant assets to the union, but it produced marital assets that were valued at over $100,000. The superior court's overall division of property was 70% to the husband and 30% to the wife.

5. *See also Burgess v. Burgess,* 710 P.2d 417, 421 n. 6 (Alaska, 1985).

6. Other jurisdictions are in agreement, at least with respect to post-separation earnings received after the filing of the divorce complaint. *See, e.g., Brandenburg v. Brandenburg,* 83 N.J. 198, 416 A.2d 327, 333 (1980); *Jolis v. Jolis,* 111 Misc.2d 965, 446 N.Y.S.2d 138, 140 (N.Y.Sup. 1981), *aff'd* 98 A.D.2d 692, 470 N.Y.S.2d 584 (N.Y.App.Div.1983). *But see, Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343, 349 (App.1981).

7. The issue of post-separation earnings requires a determination of when a married couple seeking a divorce ceases functioning economically as a single unit. Some jurisdictions look to the

■ James claims that of the nineteen items the superior court included in reaching its total of $277,147 in marital assets, five items include post-separation earnings which should have been excluded under *Hunt.* His first objection is to the valuation of his thrift plan with his employer. In as much as contributions to a thrift fund, whether made by the employer or the employee, are a form of earnings, they will be severable from marital property, once the marriage as a joint enterprise has ended. *Cf. Hunt,* 698 P.2d at 1172.[8]

■ Norma maintains that interest on contributions to both the thrift plan and the retirement fund made subsequent to her filing for divorce should be included in marital assets. We hold that interest earned after filing on contributions made before filing are part of the marital assets. Interest earned on contributions made after filing are not included in the divisible property.

The four other items that James disputes are controlled by similar reasoning. James' retirement plan contributions made after Norma filed for divorce are properly excluded under *Hunt.* At the time Norma filed, the plan was worth $13,751, but by the time the decree was issued, it had grown to $21,280. This $7,529 growth should have been excluded from marital assets to the extent it was composed of post-filing contributions and interest earned on post-filing contributions.

■ The third disputed item is the Schancks' savings account at the First National Bank. James contends that the account contains a $6,675 annual bonus that was paid to him in early 1984, which should

have been excluded from marital assets. The documentary record supports this contention. While we agree with his reasoning, we also note that since half of the year-end bonus was earned prior to the filing for divorce (i.e. during the period January 1, 1983, to June 6, 1983), it is arguable that only half should be excluded from the couple's marital assets.

■ The fourth disputed item is the $4,700 in James' checking account, which he claims was composed of $3,200 from his paychecks in the two weeks prior to trial, and $1,500 from his son Jay's savings. If these contentions are supported on remand, then the respective sums are properly excluded.

■ Finally, the fifth disputed item is $3,700 worth of furnishings in James' apartment, most of which, he contends, were purchased with his salary after his separation from Norma. Nonetheless, if these items are to be excluded from marital property on remand, the superior court should check the list of furnishings (Defendant's Exhibit F), in order to determine which particular items constitute "most" of these furnishings.

In sum, under James' arguments, the five disputed items include post-separation property which should have been excluded under *Hunt.* We remand the disputed items to the superior court for determination of the exact amount that should be excluded.

## REHABILITATIVE ALIMONY.

The superior court awarded Norma Schanck $700 a month in rehabilitative ali-

---

time of separation, some to the date of the complaint for divorce, and others to the time of the divorce decree for this purpose.

8. We note, however, that the record does not support James' claim that, in effect, $10,703 should have been excluded. That figure represents the difference between the plan's value at the time of the decree ($22,823) and its value on December 31, 1982 ($12,120). The correct amount to be deducted from $22,823 is the

plan's value on June 6, 1984, the date of Norma's filing for divorce, not the $12,120 mentioned above. [Supp.R., *Report of Benefit Brokers, Inc.* of January 10, 1983, p. 5] Unless no contributions were made to the plan between January 1 and June 6, 1985, on remand the superior court should correct for this discrepancy. It would appear that some three-quarters of the amount James attempts to exclude, or about $8,025, is properly substantiated by the record.

mony for an eighteen-month period. The granting of maintenance payments in a divorce judgment is controlled by AS 25.24.-160(2), which provides that an amount which is "just and necessary" may be granted without regard to fault.[9] However, our decisions have established a preference for meeting the parties' needs with the division of property, rather than with alimony, where the marital assets are adequate to do so. *Russell,* 623 P.2d at 1224; *Malone v. Malone,* 587 P.2d 1167, 1168 (Alaska 1978).[10]

▮▮▮ Here James supported Norma under an interim order while she attended classes to be recertified as a nurse. James claims that since Norma succeeded in getting her new certification during the year and a half he supported her under the interim order, he should not now be required to pay rehabilitative alimony, especially in view of the fact that Norma has already reentered the job market. We find this reasoning persuasive. We recognize that rehabilitative alimony is of limited duration, and may be more easily granted than permanent alimony. In cases where marital assets are adequate to equitably provide for both parties, however, rehabilitative alimony is properly limited to job training or other means directly related to the end of securing for one party a source of earned income. On this record Norma's need for rehabilitative alimony does not rise to this level.[11]

## EQUITABLE DIVISION OF MARITAL ASSETS.

James' third specification of error is that the overall division of property is inequitable when measured against the criteria set out in *Merrill v. Merrill,* 368 P.2d 546, 547 n. 4 (Alaska 1962). This argument is inappropriate for consideration at this time. As we have noted in *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983), the equitable division of marital assets involves a three step process. First, the trial court must determine what property is available for distribution. Second, the court must value the property. Third, the court must decide how the property should be equitably divided. Our decision in this case that the trial court erred at the first step of this process affects not only the second step, valuation of the marital property, but the third as well. Thus, the division of property must be vacated.

REVERSED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.

---

9. Formerly AS 25.24.160(3), renumbered effective October 1, 1985, am. § 3 ch. 40 SLA 1985.

10. This preference is also expressed in the Uniform Marriage and Divorce Act § 308(a), Commissioners' Comment (1973). The Uniform Act specifically requires that a party both lack sufficient property to provide for his reasonable needs *and* be unable to support himself through appropriate employment in order to be eligible for alimony. *Id.* at § 308. While the language of the Alaska statute (AS 25.24.160(2)) is less demanding than that of the Uniform Act, we have at times read our provision narrowly. *See Messina v. Messina,* 583 P.2d 804, 805 (Alaska 1978) (incorporating the Commissioners' abovementioned Comment in the standard for determining when alimony is appropriate).

11. *Cf. Bussell v. Bussell,* 623 P.2d 1221, 1224 (Alaska 1983) (rehabilitative alimony allowed for job training, in addition to property share of $574,504.50).