Monte D. MILLER, Appellant,

v.

Karol T. MILLER, Appellee.

No. S–1434.

Supreme Court of Alaska.

June 26, 1987.

Holly B. Leinweber and William T. Ford, Law Offices of William T. Ford, Anchorage, for appellant.

David G. Stebing, Homer, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Monte Miller and Karol Miller were divorced on December 2, 1985. Monte appeals from the superior court order establishing child custody, child support, alimony, and the division of marital property. We affirm the child custody and child support awards, and remand for further proceedings as to the alimony and property awards.

### Facts

Monte and Karol were married for 13 years. They have four children, whose ages at the time of trial ranged from 3 to 12.

Karol holds an associate of arts degree in fine arts. She has never worked outside the home. During the marriage, she earned a nominal income by babysitting and selling her handiwork (ceramics and glass balls). After the parties separated in 1984, she moved with the children to her parents' home in Homer.

Monte worked for the State Fish and Game Department until 1984, when he was disabled by a nerve injury to his elbow. At the time of the trial, he was unemployed and attending college in order to retrain for a new career. The record does not reflect what his career aspirations are, what education he already has, or how long he expects to be in school.

Monte is entitled to disability and retirement benefits from several programs. At trial, Monte testified that he was receiving net disability benefits of $2,100 per month from the State of Alaska and was entitled to compensation for 55 days of accumulated leave time. He testified that when he reaches the age of 55, he will be entitled to $13,000 in state retirement benefits and $23,921.13 in supplemental employment benefits. In addition, he testified that he is entitled to approximately $13,000 as a lump sum settlement for a permanent partial disability under the workers' compensation program.

The parties' primary marital asset is a 3.3 acre parcel of land with a poorly maintained residence located near Fire Lake in the Eagle River area. The parcel has been appraised at $91,400. The parties also owned an unascertained interest in two lots in Willow. Although Karol estimated that the lots are worth $9,000 each, Monte testified that their title to the lots may be defective. In addition, the parties owned miscellaneous personal property.

### Child Custody and Child Support

The superior court awarded sole custody of the Millers' four children to Karol. The court granted "reasonable" visitation rights to Monte but left specific visitation periods to be agreed on by the parties. In addition, the court ordered Monte to pay child support of $200 per child per month.

Monte argues that the court abused its discretion in failing to make findings of fact as to the best interests of the children, in failing to state its reasons for denying shared custody to Monte, and in awarding "reasonable" visitation rights without specifying an exact visitation schedule. We disagree. Since custody was not in dispute and Monte did not request shared custody, the court was not required to make the findings Monte requests. AS 25.20.060; AS 25.20.100. Moreover, the trial court has discretion to allow the parties to develop a visitation schedule independently. If Karol fails to cooperate with the reasonable visitation order, Monte can return to the superior court to obtain an order compelling her cooperation or to request that the court formulate a more specific visitation schedule.

Monte also argues that the child support award is excessive. Again, we disagree. Since Monte testified that he is receiving disability benefits of $2,100 per month, a child support obligation of $800 per month is not unduly burdensome.[1] We affirm the custody, visitation, and child support orders.

### Rehabilitative Alimony

The superior court ordered Monte to pay Karol alimony of $125 per month for twelve months, "to provide [her] sufficient time to become in some degree self-supporting." Monte argues that the court abused its discretion in awarding rehabilitative alimony because Karol "has no intention of entering the job market."

This court has emphasized that the financial needs of divorcing spouses should generally be met through the division of property rather than through permanent alimony. But we have permitted awards of rehabilitative alimony which are for a limited duration and for the specific purpose of

---

1. Counsel for Monte indicated at oral argument that Monte significantly over-estimated the amount of his disability benefits at trial. If so,

Monte's remedy is to return to the trial court to request modification of the original order.

assisting one spouse to qualify herself for the job market. *Bussell v. Bussell,* 623 P.2d 1221, 1224 (Alaska 1981). Since rehabilitative alimony is appropriate only when it is directly related to developing a source of income, it should not be awarded to a spouse who refuses to use it for its intended purpose. *Schanck v. Schanck,* 717 P.2d 1, 5 (Alaska 1986).

At trial, Karol indicated that she has no immediate plans to go to work, and that she prefers to stay at home with the children. The trial judge anticipated that she would have to work, her preference notwithstanding. Since Karol has no work experience and few salable job skills, her employability would almost certainly be enhanced by job training.

■ We remand for a specific finding of fact as to whether Karol intends to apply the alimony toward job training. Only if the court finds that she does intend to prepare to re-enter the work force should it award her rehabilitative alimony.

### Division of Property

The superior court awarded Karol the Fire Lake property, and awarded Monte the two Willow lots together with all of his retirement and disability funds, including his workers' compensation settlement. The court divided the personal property between them.

In dividing marital property, a trial court must first determine what property is available for distribution. Next, it must find the value of the property. Finally, it must equitably allocate the property between the spouses. *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983).

Monte argues that the superior court erred at all three steps in the analysis. He argues that the court erroneously included the workers' compensation settlement as part of the property base subject to division, that it over-valued the Willow lots, and that it awarded Monte an unjustly small share of the property in light of his child support obligations of $800 per month.

We agree that the court erred in characterizing the workers' compensation settlement as joint property and in determining the value of the Willow lots. And, although the court's award to Karol of a significantly larger share of the property is not necessarily outside the scope of the court's discretion, the court must justify the disparate division on the basis of the factors this court enumerated in *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962). We therefore remand the property division for further proceedings as described herein.

1. The workers' compensation settlement

■ The characterization of workers' compensation benefits as either joint or separate property is an issue of first impression in this court. We hold that a workers' compensation disability award is marital property only to the extent that it compensates for loss of earnings during the marriage. To the extent that a workers' compensation award compensates for loss of post-divorce earnings, it must be considered separate property, even if the compensable injury occurred during the marriage. The policy rationale is obvious: since one spouse has no right to the other spouse's earnings after the marriage ends, she should have no right to a disability award that is intended as a substitute for those future earnings. We agree with the Idaho Supreme Court that

[S]ince workmen's compensation is paid to make good the impairment or loss of an individual's future capacity to earn, the community cannot lay claim to the whole of the benefit where it compensates for a period of disability which extends beyond the time of divorce. To hold otherwise would result in the deprivation of an individual's basic source of financial security. The dispositive question in classifying workmen's compensation benefits as community or separate property, therefore, is not whether the right to receive benefits vested during marriage, but rather to what extent the award compensates for loss of earning capacity during marriage.

*Cook v. Cook,* 102 Idaho 651, 637 P.2d 799, 802 (1981). Accord, *Rickman v. Rickman,* 124 Ariz. 507, 605 P.2d 909, 911 (App.1980).

Alaska Statute 25.24.160(4) permits the trial court to invade one spouse's separate property on behalf of the other spouse when compelling equitable reasons so require. *Carlson v. Carlson,* 722 P.2d 222, 224 (Alaska 1986). But compelling reasons are not apparent from the record here. Before re-computing the property division on remand, the superior court should exclude from the property base that portion of Monte's workers' compensation settlement which is a substitute for post-divorce earnings.

### 2. Valuation of the Willow lots

The superior court valued the parties' interest in the two Willow lots at $18,000. Apparently this valuation was based on Karol's testimony that the lots were worth $9,000 apiece. In light of Monte's testimony that the parties might not have valid title, we conclude that the superior court's valuation was error. It would be impossible to derive a reliable estimate of the value of the parties' interest in the lots on the basis of the evidence in the record. On remand, the parties should be required to submit additional evidence relating to the validity of their title as well as to the value of their interest in the lots. If the court determines that the validity of title is uncertain, it must take into account the risk of defective title in dividing the property.

A potentially more serious valuation error is that the superior court did not discount to present value the retirement monies that Monte will receive when he reaches the age of 55. On remand, the parties should also be required to submit evidence as to the present value of these funds, and the court should rely on the present value in fashioning the property division.

### 3. Inequitable property division

Since we hold that the court erred both in identifying the property subject to division and in determining the value of particular assets, we need not consider whether the division ultimately devised by the court was equitable.[2]

While a trial court should start with the presumption that equal divisions of property are most equitable, unequal divisions are frequently justified on the basis of the factors enumerated by this court in *Merrill v. Merrill.*[3] *Wanberg v. Wanberg,* 664 P.2d at 574–75.

In the case at bar, the superior court did not discuss the *Merrill* factors in its decision, nor is the factual basis for the unequal division obvious from the court's findings or from the record. On the one hand, Karol has no work experience and no readily salable skills. Her earning abilities are constrained by her responsibility for four children—a constraint that Monte does not share. On the other hand, Monte has been recently disabled and is in the midst of a career transition of his own. In addition, his child support obligations are significant.

If on remand the court again devises a substantially unequal division of property, it must make findings of fact sufficient to indicate the basis of the division. Although it need not make findings on all of the *Merrill* factors, it should at least make some determination as to the parties' future needs and their respective abilities to meet those needs. *Burgess v. Burgess,* 710 P.2d 417, 422 (Alaska 1985); *Carlson v. Carlson,* 722 P.2d at 225.

**2.** Assuming the values assigned to the various assets by the superior court, Karol's share of the property division amounted to $107,600. Monte's share, not including the workers' compensation award, amounted to $56,921.13.

**3.** The *Merrill* factors are the ages of the parties, their earning capacity, the duration of the marriage, the conduct of the parties during marriage, their "station in life," the circumstances and necessities of each, their health, their financial condition, the time and manner of acquisition of the property in question, the value of the property at the time of division, and the income-producing capacity of the property. 368 P.2d at 547–48 n. 4.

AFFIRMED in part and REMANDED in part for further proceedings consistent with this opinion.