Charles **RENFRO**, Appellant,

v.

Virginia D. **RENFRO**, Appellee.

No. S–3491.

Supreme Court of Alaska.

March 26, 1993.

Charles Renfro, pro se.

Maryann E. Foley, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This case involves a divorce action brought by Virginia Renfro seeking termination of her marriage to Charles Renfro. The trial court granted the divorce, awarded Virginia sole custody of the couple's three children, granted Charles visitation rights, and granted Virginia's requests for child support, rehabilitative spousal support, and attorney's fees. Charles appeals these decisions, arguing that the trial court abused its discretion on each.

### I. FACTS & PROCEEDINGS

Charles and Virginia were married on July 27, 1979. The couple have three children currently ranging in age from seven to twelve years old. Charles also has a nineteen-year-old son from a previous marriage who is living with him.

During the first eighteen months of their marriage, Charles worked as the sales manager for a lumber yard. In 1980–81 he purchased the Curtis Plumbing & Heating business which he has owned and operated since. Virginia occasionally assisted her husband at the business and otherwise cared for the children and attended university classes part-time. In July of 1988 Charles and Virginia separated and their three children resided with Virginia.

On June 10, 1988, Virginia filed her complaint for divorce in the Superior Court, Third Judicial District. A trial was held in March of 1989. In due course the trial court entered findings of fact and conclusions of law and a decree. Virginia was granted sole custody of the children and Charles was allowed liberal visitation; Virginia was awarded $833 a month in child support, $400 a month in temporary rehabilitative support for forty-eight months, and reasonable costs and attorney's fees. Charles appealed. Since filing his appeal, Charles has filed for and emerged from a chapter 11 bankruptcy.[1]

### II. CHILD CUSTODY & VISITATION

We determine Charles' contentions concerning child custody summarily. The trial court committed no legal or factual error in granting sole custody to Virginia with liberal visitation to Charles.[2]

---

1. In an order dated October 26, 1989, this court stayed Charles' appeal until completion of the bankruptcy proceedings.

2. In reaching his determination, the trial judge drew upon the report and testimony of Katherine Yeotis, the Custody Investigator. Ms. Yeotis testified that Virginia should receive sole custody of the children and offered the basis of her opinion for the court's consideration. She testified that "communication is quite lacking" between Charles and Virginia; that both parents had created difficulties concerning visitation during their separation; and that Charles sought custody as a means of controlling Virginia's behavior (i.e., Charles would allow Virginia to visit the children "as long as she behaves"). Ms. Yeotis also testified about her concern over Charles' anger because, in her experience as a custody investigator, "frequently children are used" as tools when such anger exists.

Additionally, the trial court heard both Charles' and Virginia's testimony. Virginia testified to her husband's bouts of anger, attempts to manipulate their children, and uncooperative behavior in handling child visits during their separation. Charles' testimony showed that, since their separation, Virginia had taken the initiative in most areas of the children's wellbeing.

These facts show a great deal of conflict between the parents, which supports the trial court's choice of sole custody over shared custody. *See Bell v. Bell,* 794 P.2d 97, 99 (Alaska 1990) ("joint custody would be inappropriate" when parents cannot cooperate). With regard to awarding Virginia sole custody, the above evidence shows the trial court faced a fairly close decision in which its determination is justifiable and cannot be characterized as clearly erroneous.

Charles also complains that the superior court's provision of visitation was in error. The superior court adopted Ms. Yeotis' suggestion of "reasonable and liberal visitation" for Charles.

## III. CHILD SUPPORT

The superior court based its award of child support on a straightforward application of Alaska Rule of Civil Procedure 90.-3(a)(1) and (2). First, the superior court determined Charles' adjusted annual income to be $30,000. Second, the court selected the formula in Rule 90.3(a)(2)(C)—33% of adjusted annual income—as the child support measure for three children. Third, using this formula, the court determined that Charles was obligated to pay $10,000 annually in child support—33% of $30,000—which roughly divides into $833 per month.

Charles complains that the superior court, in determining child support, failed to: (1) consider Charles' custody and support of a child from a previous marriage; (2) provide for abatement of child support upon the children attaining the age of majority or otherwise becoming emancipated; (3) reduce child support to account for Charles' expenses during the six weeks each summer he has custody of the children; and (4) reduce child support by the cost of medical insurance Charles is obligated to provide the children. Additionally, Charles complains that the superior court incorrectly calculated his earning capacity which, in turn, resulted in an erroneous award of child support. We now address these points.

### A. *Reduction for Summer Visitation Expenses*

■ Charles argues that he is entitled to credit against child support for expenses incurred during the children's visitation with him.[3] In making this argument, Charles relies solely upon Alaska Rule of Civil Procedure 90.3(a)(3) which allows the superior court to "reduce child support payments up to 50% for any period in which that parent has extended visitation of over 27 consecutive days." The decision whether to credit the obligor parent's support

obligation for these expenses is committed to the superior court's discretion.

Although affording a credit under Rule 90.3(a)(3) is a discretionary decision, that fact does not relieve the superior court of its obligation to *consider* whether or not to grant a credit. In a related context, we have required that the superior court expressly consider and make findings under Rule 90.3. In *Long v. Long,* 816 P.2d 145 (Alaska 1991), we concluded that the superior court might have ignored the applicability of Rule 90.3(b) on facts that potentially triggered a shared physical custody adjustment of child support payments. *Id.* at 158. We remanded for specific findings.

■ The same concern and respect *Long* required for Rule 90.3(b) is required for any provision of Rule 90.3 whose application is urged by a party where a sufficient factual predicate is established. *Cf. Lowdermilk v. Lowdermilk,* 825 P.2d 874, 879 (Alaska 1992) (findings are required on all statutory factors that are at issue and germane to the custody determination). Because the trial court's findings of fact neither indicate that a child support adjustment under Rule 90.3(a)(3) was considered nor, if it was considered, express the court's rationale for declining to make an adjustment, we vacate the award of child support and remand for findings under this subsection.

### B. *Custody and Support of a Child from a Previous Marriage*

■ Charles argues that he is entitled to credit against child support for the expenses of raising his son from his previous marriage. Rule 90.3(a) allows the court to reduce a parent's total income in calculating child support to reflect "child support and alimony payments arising from prior relationships...." *Id.* 90.3(a). The commentary to Rule 90.3 elaborates upon this requirement: "However, no explicit deduc-

---

The visitation schedule provided for "every other weekend from Friday to Sunday, alternate holidays, six (6) weeks summer visitation, and any other times as can reasonably be arranged between the parties." Charles presents no com-

prehensible arguments why this visitation determination is in error.

3. He raised this contention in the superior court in a post-decree motion for reconsideration which was summarily denied.

tion is allowed *when the 'prior' children live with the obligor* and thus the obligor furnishes support directly to the children. In such a situation the court should reduce the support of the obligor when necessary to avoid substantial hardship to the 'prior' children." *Id.* Commentary VI (B)(3) (emphasis added). Thus, Charles is not entitled to a mandatory credit under Rule 90.-3(a).

▇ Rule 90.3(c), however, permits variances from a scheduled child support award "for good cause upon proof by clear and convincing evidence that manifest injustice would result" without a variance; substantial hardship to prior children caused by a scheduled child support award can be considered as an instance of good cause under Rule 90.3(c). The trial court did not consider or make findings under this provision of Rule 90.3. However, Charles presented no evidence of hardship to his son from his prior marriage at trial or in his motion for reconsideration. Thus this point was not genuinely at issue before the trial court. No remand for further findings on this point is required.

## C. *Reduction as Each Child Reaches Age of Majority*

Charles complains that the superior court "failed to provide for reduction of the child support obligation as each child attained majority or was otherwise emancipated...." This contention lacks merit as the superior court's decree states that Charles shall only pay child support "until such time as each such child reaches the age of 18, dies or is emancipated...."

## D. *Credit for Medical Insurance*

Charles complains that the superior court did not credit his child support obligation to account for the cost of medical insurance he is obligated to provide for the children.[4] Virginia agrees that the superior court erred in this regard. Thus, a remand for this purpose is required.

## E. *Charles' Earning Capacity*

▇ Charles complains that the superior court erred in determining that he has an earning capacity of $30,000 per year. Charles notes that he purchased Curtis Plumbing & Heating, his current business and source of income, in 1980–81. He argues that the superior court incorrectly based his earning capacity on the $36,000 per year he earned prior to purchasing the business. Instead, Charles argues that the court should have based his earning capacity on his testimony that he "was able to earn $2,000 or less per month." Indeed, his "total monthly income" as stated on his sworn financial declaration was $1,907. In determining earning capacity for Rule 90.3 purposes, the court has discretion, on the evidence before it, to choose "the best indicator of ... future earning capacity." *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992).

Charles testified that his annual income had changed from about $36,000 per year as a sales manager to about $24,000 per year in his current business. In reaching the sum of $30,000 per year, the trial court appears to have averaged Charles' past and present income figures. This court has approved of an averaging approach when a parent's future earnings are uncertain, *Pugil v. Cogar*, 811 P.2d 1062, 1067 (Alaska 1991), a description which aptly fits Charles' situation.[5]

Since the superior court's decision is supported by the evidence and consistent with our decisions it must be affirmed.[6]

---

**4.** Rule 90.3(d) provides in part: "In calculating a child support award, credit will be given for medical and dental insurance, or educational payments for the children which are required by the court or administrative order and actually paid."

**5.** Charles testified that his business was improving after three bad years.

**6.** Charles is free to petition the superior court for modification of child support if he can show that he is unable to earn the income level determined by the superior court and, thus, cannot meet his support obligation. *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991). Under Rule 90.3(h)(1) a material change in circumstances for modification purposes is presumed if support under the rule is "more than 15

## IV. REHABILITATIVE ALIMONY

This court has "established a preference for meeting the parties' needs with the division of property, rather than with alimony...." *Schanck v. Schanck*, 717 P.2d 1, 5 (Alaska 1986). Yet, this court has also approved of "rehabilitative alimony [for] job training or other means directly related to the end of securing for one party a source of earned income." *Id.* In awarding spousal support, rehabilitative or otherwise, the superior court must weigh each spouse's age, earning capacity, financial position (including assets), health and physical condition, and conduct during the marriage. *Schoning v. Schoning*, 550 P.2d 373, 374 (Alaska 1976).

Virginia currently attends the University of Alaska where she is pursuing a degree in psychology. Virginia is seeking the degree in order to begin work as a mental health counselor. The superior court recognized this job plan and awarded Virginia $400 a month in "rehabilitative alimony to increase her skills in order that she may secure a better job to help raise the level of her children's standard of living." The court's award is temporary, allowing Virginia forty-eight months to complete her degree.

The trial court thoroughly considered Virginia's need for rehabilitative support. Yet, in doing so, the court only undertook half the needed inquiry. The court should have also considered Charles' needs and financial status, especially as it affected his ability to provide rehabilitative support. *See Schoning*, 550 P.2d at 374. Thus, the court erred in only considering *Virginia's* need for rehabilitative support. On remand, the superior court must also consider Charles' relative ability to provide such support.

## V. PROPERTY

Charles argues, and Virginia agrees, that the superior court erred in failing to divide all of the couple's property. On remand, the superior court should divide Charles' and Virginia's property in accordance with the three-step analysis set forth in *Wanberg v. Wanberg*, 664 P.2d 568, 574 (Alaska 1983).

## VI. CONCLUSION

We AFFIRM the superior court's grant of sole custody to Virginia and the order pertaining to visitation. We VACATE and REMAND the child support award for the superior court to consider whether Charles is entitled to a reduction under Rule 90.-3(a)(3) (visitation). On remand, the superior court should also credit the child support obligation for Charles' expense in providing the children's medical insurance. We also VACATE and REMAND the award of rehabilitative support for the superior court to determine that issue in light of Charles' needs and financial status as well as those of Virginia. Finally, on remand the superior court must divide the remainder of Virginia's and Charles' property.[7]

BURKE, J., not participating.

---

percent greater or less than the outstanding support order."

7. Virginia concedes that the issue of attorney's fees is moot in light of Charles' recent bankruptcy.