Andrew P. ULSHER, Appellant,

v.

Lynda S. ULSHER, Appellee.

No. S–5343.

Supreme Court of Alaska.

Feb. 11, 1994.

Vincent P. Vitale, Law Office of Vincent Vitale, P.C., Anchorage, for appellant.

Max F. Gruenberg, Jr., Gruenberg and Clover, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

*OPINION*

COMPTON, Justice.

Andrew Ulsher appeals the superior court's property division, rehabilitative alimony, and child visitation decisions in this divorce case. We affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Andrew Ulsher and Lynda Ulsher were separated after eight years of marriage. They have two children: Andrew, age seven and Alexandra, age three.

Andy is a career military officer and Lynda is a draftsperson. Andy earns $4,817 per month net while Lynda earns $1,445 per month net.[1] As a seasonal employee, however, Lynda rarely works during January and February.

Lynda and the family followed Andy wherever his military career took him. Throughout the marriage, Lynda took primary responsibility for the children. During the first four years of marriage, the family lived in Berlin where Lynda was unable to continue pursuing her engineering degree.

At the time of the divorce, Lynda had completed forty-five credits toward a degree in civil engineering. She submitted a plan which would allow her to obtain her degree in six years. She testified that a degree

---

1. The $1,445 figure is taken from Lynda's Financial Declaration, which was submitted prior to trial. At trial, Lynda testified she was earning $1,600 per month net. According to the Financial Declaration, Lynda's monthly expenses totaled $3,757. However, at trial she testified that her monthly expenses could be as low as $3,550.

We do not need to comment further on these minor discrepancies, because Andy did not contest the amount of child support in his points on appeal. Under either set of figures, Lynda is the significantly economically disadvantaged party, as found by the superior court. Her expenses

would improve her current position and allow her to become a registered engineer.[2]

The superior court found that Lynda was "the significantly economically disadvantaged party at the time of divorce" and awarded her two-thirds of the marital property. The court also found that "[b]oth parties are fit to serve as the legal and physical custodians of their children." However, since they could not "communicate or cooperate as co-parents," the court concluded that joint legal custody would not be in the best interests of the children. Lynda was granted sole legal custody and primary physical custody of the children. Andy received extensive visitation rights. Lynda was awarded $646 per month child support. Finally, the court awarded Lynda rehabilitative alimony for five years, noting in its oral findings that "[a]s she progresses through her education and gets more time in her job it is to be believed, I think, that her situation will improve some. She goes up through the steps and gets the foagies(ph) as she goes."[3]

## II. *DISCUSSION*

### A. STANDARDS OF REVIEW

■ An equitable division of marital assets involves a three-step process. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983). First, the trial court must determine what property is available for distribution. *Id.* This step is reviewed for an abuse of discretion, although it may pose legal questions to

which this court applies its independent judgment. *Jones v. Jones*, 835 P.2d 1173, 1175 (Alaska 1992). Second, the trial court must determine the value of that property. *Id.* The valuation of marital property is a factual determination which will be reversed only if clearly erroneous. *Id.* Third, the trial court must determine the most equitable division of the property. *Id.* A trial court has broad discretion in fashioning a property division. *Laing v. Laing*, 741 P.2d 649, 651 (Alaska 1987). This court will not disturb a property division unless it is clearly unjust. *Id.* A rehabilitative alimony award is reviewed for an abuse of discretion. *Bays v. Bays*, 807 P.2d 482, 485 (Alaska 1991). This court will reverse a custody decision only where the record shows an abuse of discretion, or the controlling factual findings are clearly erroneous. *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991).

### B. DIVISION OF MARITAL ASSETS

■ Andy disputes only the third aspect of the property division: the distribution of the marital assets. The superior court allocated one-third of the marital estate to Andy and two-thirds to Lynda. Andy argues that Lynda will receive 84% of the marital estate if the alimony is factored into the division. This argument mischaracterizes the nature of the superior court's decision. An alimony award is separate from a property division. Payments that do not divide property cannot

exceed her income by approximately $2,000 per month.

2. Lynda's plan identified two specific engineering courses she would take each semester at U.A.A., commencing summer semester 1992 and continuing each fall and spring semester into 1999. In addition, she identified six specific elective courses she hoped to take, one each summer. She testified that the sooner she finished her coursework, the more quickly she would be able to get her Engineer in Training (EIT) certificate, "which would move me up in my position at my office." Also it would put her closer to obtaining her Professional Engineering (PE) certificate. She did not offer evidence of the cost of tuition and fees she would incur in completing the plan, nor the increase in income she could anticipate in advancing from a draftsperson to a PE.

Andy offered no evidence regarding Lynda's plan. Specifically, he did not object to the lack of evidence of the cost of the plan. He did not

question whether the plan was cost effective (cost of obtaining the degree versus assumed increased earnings), whether the plan was feasible, or whether Lynda's earning capacity would be enhanced as a result of completing the plan. In closing argument his only comment touching upon the plan and the issue of rehabilitative alimony was that he "propose[d] to pay Lynda $250 per month alimony for a period of two years."

3. Lynda is paid by the hour. The rehabilitative alimony she requested was intended to offset the "time that [she] would take out of [her] work time" to attend classes. The term "foagies," as it appears in the transcript, probably derives from Judge Ripley's incarnation as a reserve military officer. A fogy, fogie, or fogey, is the increase over base pay given after specified periods of military service.

be considered part of a property division. *Rhodes v. Rhodes,* 754 P.2d 1333, 1335 (Alaska 1988).

Although an equal division of property is presumed to be the most equitable, the trial court has broad discretion to deviate from absolute equality. *Wanberg,* 664 P.2d at 574–75. In fashioning a property division, the relevant factors to consider are

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experience, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties ...;

(E) the conduct of the parties ...;

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party....

AS 25.24.160(a)(4).

The marriage was of moderate length. Lynda worked off and on throughout. The needs of the family often defined the extent of her career. Her income is less than half of Andy's. Andy argues that Lynda "suffered no diminution in her earning capacity during the marriage." "Diminution in earning capacity" is not a statutory factor, however. Based on the statutory factors, the trial court's allocation of marital property was not clearly unjust and should not be disturbed.

## C. REHABILITATIVE ALIMONY

The superior court found that "it is in both the children's and Andy's best interests that Lynda become fully self-supporting." Therefore, it awarded Lynda rehabilitative alimony while she obtains her degree. This alimony gradually decreases over a five year period.[4]

Andy argues that Lynda's educational plans are not financially sound and would not prevent her from working full time. Also, since her degree will take six years and her support will last only five, Andy argues that there is insufficient correlation between the award and Lynda's plans. Finally, Andy contends that the property award alone will allow Lynda to live comfortably.

Lynda responds that although a property division is preferable to a support award, this court leniently reviews awards of limited duration, such as the one here. *Schanck v. Schanck,* 717 P.2d 1, 4–5 (Alaska 1986); *Bussell v. Bussell,* 623 P.2d 1221, 1224 (Alaska 1981). Lynda further argues that the award was also intended to let her keep the house, and is therefore a combination of rehabilitative and reorientation alimony.

Rehabilitative alimony is limited to "job training or other means directly related to the end of securing for one party a source of earned income."[5] *Schanck,* 717 P.2d at 5. When Lynda completes her education, she will have a degree in civil engineering. The period during which Lynda will receive rehabilitative alimony is of short duration. We conclude that the superior court did not abuse its discretion.

## D. CHILD CUSTODY AND VISITATION

The evidence supported the finding that Lynda and Andy could not cooperate enough to allow a joint legal custody arrangement. The superior court granted

---

4. Lynda was awarded $500 per month the first year, $400 per month the second year, $300 per month the third year, and $200 per month for each of the last two years. The trial judge commented: "This money won't do it, but it's more, I recognize, than defendant is going to feel is appropriate."

5. When a party claims rehabilitative alimony, we strongly encourage submission of a cost estimate of the rehabilitative plan, as well as an approximation of the economic benefit that is expected. It is necessary that the person receiving rehabilitative alimony will improve employability as a result of the plan.

Lynda sole legal custody [6] and primary physical custody. In six pages of findings, the court specified in detail the shared custody arrangement. During the summer, Andy and Lynda will have the children for alternating weeks. During the school year, Andy will have the children for three out of four weekends. Andy's weekend with Andrew begins on Thursday evening, while his weekend with Alexandra begins on Friday until her fifth birthday.

Andy argues that he should have custody for alternating weeks throughout the entire year. In the alternative, he argues that both children's weekends should start on Thursday evening.

The court essentially followed the recommendations of Kathleen Harrington, the custody investigator. Harrington recommended that Andy have the children on alternating weekends from Thursday to Monday morning during the school year and alternating weeks in the summer.

The court considered the advantages of keeping Andrew near his school during the school year, and also allowing him to have extensive contact with his father. *See* AS 25.20.090(4)–(6). The court was also concerned about separating Alexandra from her mother for extended periods. Lynda had testified that Alexandra was more irritable and clingy after visits with her father. The record indicates no abuse of discretion with respect to the custody arrangement. The court went to great lengths to specify every detail in order to avoid future friction between the parties.

## III. *CONCLUSION*

Based on the statutory factors, the superior court's allocation of marital property was not clearly unjust and should not be disturbed. Likewise, the record indicates no abuse of discretion with regard to either the superior court's custody and visitation decisions or the rehabilitative alimony award. Therefore, we AFFIRM the judgment of the superior court.

BURKE, J., not participating.

MATTHEWS, Justice, dissenting in part.

I dissent from the portion of the majority opinion which affirms the superior court's award of rehabilitative alimony. In my opinion, the superior court should not have awarded rehabilitative alimony without making specific findings to support its decision.

Alaska Statute 25.24.160 provides for the award of alimony when "just and necessary." *See* AS 25.24.160(a)(2); *Schanck v. Schanck,* 717 P.2d 1, 5 (Alaska 1986). The just and necessary statutory requirement applies to all forms of alimony, permanent or temporary. In general, spouses who cannot support themselves should have their basic needs met with a weighted division of property, rather than alimony, where the marital assets are adequate. *Schanck,* 717 P.2d at 5; *see also Ramsey v. Ramsey,* 834 P.2d 807, 809–10 (Alaska 1992); *Dixon v. Dixon,* 747 P.2d 1169 (Alaska 1987); *Bussell v. Bussell,* 623 P.2d 1221, 1224 (Alaska 1981). However, rehabilitative alimony is appropriate when it is just and necessary and "when the recipient spouse intends to apply the alimony toward job training designed to lead to employment." *Jones v. Jones,* 835 P.2d 1173, 1178–79 (Alaska 1992); *see also Miller v. Miller,* 739 P.2d 163, 165 (Alaska 1987) (stating that rehabilitative alimony "is appropriate only when it is directly related to developing a

---

**6.** We recognize that joint or shared legal custody is generally preferred to sole legal custody. An act amending AS 25.20.060 provides:

> The legislature finds that it is generally desirable to assure a minor child frequent and continuing contact with both parents after the parents have ... dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing. While actual physical custody may not be practical or appropriate in all cases, it is the intent of the legislature that both parents have the opportunity to guide and nur-

ture their child and to meet the needs of the child on an equal footing beyond the consideration of support or actual custody.

An Act Relating to Child Custody, ch. 88, § 1(a), SLA 1982; *see also Bell v. Bell,* 794 P.2d 97, 99 (Alaska 1990) (recognizing the legislature's intent to favor joint legal custody, regardless of the physical custody arrangement). However, in view of the lack of cooperation between the parties on child rearing decisions, we conclude that the superior court did not abuse its discretion in awarding sole legal custody to Lynda.

source of income" and therefore "should not be awarded to a spouse who refuses to use it for its intended purpose").

To support an award of rehabilitative alimony, we have required the superior court to make specific findings regarding the spouse's need for the alimony and how he or she intends to use the award to develop a source of income. *See e.g., Dixon,* 747 P.2d at 1174 (remanding case for specific findings because spouse's "vague education plans" did not support trial court's award of rehabilitative alimony); *Miller,* 739 P.2d at 165 (rejecting alimony award absent specific findings as to whether wife intended to use alimony for job training); *Carlson v. Carlson,* 722 P.2d 222, 225 (Alaska 1986) (requiring trial court to reconsider alimony award and to state reasons for its decision); *see also Jones,* 835 P.2d at 1178–79 (requiring superior court to make specific findings regarding spouses' financial needs when awarding spousal support).

In this case, the superior court did not make specific findings to justify the support award. The court stated:

> On the issue of spousal support, it is in both the children's and Andy's best interests that Lynda become fully self-supporting. It was part of Lynda's reasonable expectation with the marriage that she be assisted in achieving her educational goal of a degree and certification as a professional engineer. She has worked toward realizing her career goals during the marriage. There is a correlative benefit to the children of their mother's attaining this professional degree. Therefore, the court awards spousal support for the five years that Lynda reasonably expects to take courses, part-time at UAA.

The court's statement does not discuss Lynda's specific need for the support nor her educational plans. It also does not address the legitimate question of whether Lynda's full-time earnings plus child support will be sufficient to maintain the household while she pursues her engineering degree. Thus, I would remand with instructions that the trial court make specific findings regarding the need for rehabilitative alimony. If, after further review, the superior court remains con-

vinced that rehabilitative alimony is necessary, it should fashion an award that is directly related to Lynda's educational goals and needs.