**Michael Ray MYERS, Appellant,**

v.

**Lyla Dawn MYERS, Appellee.**

No. S–6952.

Supreme Court of Alaska.

Nov. 22, 1996.

Richard D. Pennington and Kristi A. Nelson, Richard D. Pennington & Associates, P.C., Anchorage, for Appellant.

Michael B. Logue, James E. Gorton & Associates, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

PER CURIAM.

I. *INTRODUCTION*

In this divorce action, Michael Myers contends that the trial court erred in awarding

his former wife, Lyla Myers, rehabilitative alimony. In the alternative, Michael Myers asserts that the trial court erred by failing to consider adequately the needs and financial abilities of the parties in fixing the amount of the rehabilitative alimony award. We conclude that rehabilitative alimony was appropriate and that the trial court did not err in its assessment of Lyla Myers' needs. However, we remand the case to the superior court for specific findings relating to Michael Myers' ability to pay the award.

## II. FACTS AND PROCEEDINGS

Michael and Lyla Myers were married twice between 1980 and 1995. During the first marriage, which ended in 1986, Michael adopted two of Lyla's children. The couple also had one child of their own. On July 16, 1989, Michael and Lyla were remarried. This second marriage ended in divorce on February 3, 1995. At the time of the divorce, both Michael and Lyla were thirty-eight years old and in good health. Michael has been an Anchorage firefighter since 1984. Lyla has been the primary caretaker of the children since they were born. She has also been a full-time student at the University of Alaska, Anchorage since September 1989.

Pursuant to the divorce decree entered by the trial court, Lyla received custody of the children. The trial court divided the marital property and awarded Lyla the family residence, which had $5,000 equity, as well as one-half of Michael's pension and deferred compensation accrued during the marriage. In addition, the court found that Lyla's $37,-000 in student loans were used to pay household expenses during the marriage. Therefore, it divided the student loan debt equally between the parties. Upon dividing all the property, the trial court determined that Michael owed Lyla $24,946 and ordered him to pay her this amount in twenty-six monthly installments of $981 each. Michael does not appeal this division of the marital property.

During the trial court's proceedings, Lyla argued that she should receive rehabilitative alimony for approximately six years so that she might complete her undergraduate and graduate degrees. The trial court, however, ordered Michael to pay rehabilitative alimony to Lyla for only twenty-four months. The amount of the monthly payments, $981, is equal to the monthly mortgage payments on the family residence. The trial court ordered Michael to pay the rehabilitative alimony first, and at the expiration of twenty-four months, to begin paying installments of the property division. Thus, Michael was to pay Lyla $981 for fifty months. Michael disputes both the trial court's decision to award rehabilitative alimony and its methods for calculating the size of the award.

## III. DISCUSSION [1]

### A. The Superior Court's Award of Temporary Rehabilitative Alimony to Lyla Was Appropriate.

The first question before us is whether the superior court erred in awarding rehabilitative alimony to Lyla. Michael raises two challenges to this award.

### 1. Lyla's educational plans are sufficient to support an award of rehabilitative alimony.

First, Michael argues that Lyla's educational plans are too vague to justify twenty-four months of rehabilitative alimony. We disagree.

At trial, Lyla testified that she was a full-time student at the University of Alaska, Anchorage (UAA) and needed three semesters of course work to complete her bachelor's degree in sociology and political science. When questioned about her postgraduation plans, she testified as follows:

Q Okay. On completion of your undergraduate, what is your next—what is your plan?

A What with a combined degree in sociology and political science, I have a— there's a public administration program at UAA that's open to me with a master's degree.

---

**1.** An award of alimony is reviewed under the abuse of discretion standard. *Groff v. Groff,* 408 P.2d 998, 1001 (Alaska 1965).

Q Okay. And what is your goal after getting that degree?

A I want to work in community planning, either private, public, I'm not sure. And how we go about changing some of the things that don't work real well in our society. It's a ways off, and I haven't really identified a job as yet.

Lyla testified that the master's degree program at UAA would require two additional years of studies after she earned her bachelor's degree.

■ Michael contends that rehabilitative alimony is inappropriate in this case because Lyla plans to enroll in a graduate degree program rather than immediately enter the job market upon completion of her undergraduate degree. As Michael correctly notes, we have required any rehabilitative alimony award to be supported by a finding that "the recipient spouse 'intends to apply the alimony toward job training.'" *Dixon v. Dixon*, 747 P.2d 1169, 1173 (Alaska 1987) (quoting *Miller v. Miller*, 739 P.2d 163, 165 (Alaska 1987)). Indeed, in *Dixon* we determined that a recipient spouse did not have a "sufficiently detailed course plan and degree goal" to justify an award of rehabilitative alimony. *Dixon*, 747 P.2d at 1173.

However, we conclude that Lyla has submitted a sufficiently detailed plan for her studies. In two cases subsequent to *Dixon*, we established that a spouse's educational plan is sufficient for the purpose of supporting a rehabilitative alimony award if the spouse identifies a career goal, a degree program aimed at realizing that goal, and a time frame during which the degree may be earned through reasonable diligence. *Ulsher v. Ulsher*, 867 P.2d 819, 820–22 (Alaska 1994); *Renfro v. Renfro*, 848 P.2d 830, 834 (Alaska 1993). In neither case did we require the spouse to have identified a specific postgraduation job.

For example, in *Ulsher* we approved Lynda Ulsher's plan to become a registered engineer by completing her civil engineering degree in six years. *Ulsher*, 867 P.2d at 820–21. Similarly, in *Renfro*, the court allowed Virginia Renfro forty-eight months to complete her degree in psychology so that she might begin work as a mental health counsel-

or. *Renfro*, 848 P.2d at 834. Although we remanded for more specific findings about Charles Renfro's ability to pay, we concluded that the trial court had thoroughly considered Virginia Renfro's educational plan. *Id.* We did not conclude that the plan was too vague or in any way inadequate to support an award of rehabilitative alimony.

Lyla's plan is substantially similar to those we approved in *Ulsher* and *Renfro*. It is undisputed that, at the time the divorce decree was entered, Lyla was enrolled in an undergraduate program of studies at UAA and was majoring in sociology and political science. Lyla plans to complete the remaining three semesters of that program before entering a two-year master's degree program. While she has not identified a specific postgraduation job, she has stated a clear goal of becoming a community planner in either the public or private sector. This career goal, combined with Lyla's plans to complete studies aimed at achieving her goal, is sufficient to support an award of rehabilitative alimony.

*2. Lyla's college attendance throughout the marriage does not render rehabilitative alimony inappropriate.*

■ We also reject Michael's second argument that an award of rehabilitative alimony is inappropriate because Lyla was a full-time student for substantially all of their second marriage. Michael argues that since Lyla did not forego her education during the marriage, she does not require "rehabilitation" after the marriage.

We reject Michael's argument for two reasons. First, if we were to conclude that rehabilitative alimony may not be awarded where the recipient spouse is pursuing a course of study prior to divorce, our holding would be at odds with our decision in *Ulsher v. Ulsher*, 867 P.2d 819 (Alaska 1994). In that case, the recipient spouse had completed forty-five units of credit toward a degree in civil engineering prior to divorce. *Ulsher*, 867 P.2d at 820. Nevertheless, we concluded that the superior court did not abuse its discretion in awarding rehabilitative alimony

for a five-year period during which the recipient spouse would work toward her degree.

■■■ Moreover, our conclusion is consistent with the underlying purpose of rehabilitative alimony set forth in *Schanck v. Schanck*, 717 P.2d 1, 5 (Alaska 1986). We stated that the purpose of rehabilitative alimony is to allow the recipient spouse to "secur[e] ... a source of earned income." *Id.* Subsequent to *Schanck* we recognized, and today we emphasize, that rehabilitative alimony is an appropriate award for trial courts to make to minimize the economic impact of divorce on a spouse who exits a marriage with few job skills and little earning capacity. *See, e.g., Bays v. Bays*, 807 P.2d 482, 485 (Alaska 1991). Rehabilitative alimony should be designed to support recipient spouses while they receive job training or other education aimed at improving their ability to become self-supporting. *Ulsher*, 867 P.2d at 822.

In this case, we conclude that the superior court did not err in awarding rehabilitative alimony to Lyla. The purpose underlying rehabilitative alimony is equally well-served regardless of whether Lyla got a head start on her training prior to divorce. The record indicates that when the marriage ended, Lyla had few job skills and little earning capacity. When she married Michael, she had completed only the ninth grade and had never earned more than minimum wage. Although she was a college junior with an impressive record of academic success, Lyla's prospects of employment at the time of divorce continued to be slim because she had not yet earned her degree. Moreover, Lyla had been, and would continue to be, the primary caretaker of the Myerses' three children. Thus, an award of rehabilitative alimony was appropriate to minimize the effects of the divorce on Lyla and to help her to become self-supporting.

B. *The Superior Court's Calculation of the Amount of Rehabilitative Alimony Awarded to Lyla.*

■■■ The final question before us is whether the superior court erred in its calculation of the amount of rehabilitative alimony awarded to Lyla. Alaska Statute 25.24.160(a)(2) authorizes a trial court to award alimony so long as it is "just and necessary." Pursuant to that statute, we require trial courts to make adequate findings about "the financial needs and abilities of both parties." *Davila v. Davila*, 876 P.2d 1089, 1094 (Alaska 1994). We have noted that, "[a]lthough a trial court need not make findings regarding every factor, we have remanded awards of alimony when there is an insufficient analysis of the needs of the alimony recipient or the means of the paying party." *Id.* at 1095 (citations omitted).

Michael contends that the trial court failed to make adequate findings of fact both about Lyla's need for rehabilitative alimony and about Michael's ability to pay the installments on the award for twenty-four months.

1. *The trial court made adequate findings about Lyla Myers' needs.*

Michael asserts that the trial court failed to make adequate findings of fact about Lyla's financial circumstances. He specifically contends that the trial court underestimated Lyla's ability to meet her own needs without rehabilitative alimony. We disagree.

■■■ Contrary to Michael's argument, the trial court made specific findings that indicate it adequately considered Lyla's needs and financial abilities. In finding that the alimony award was appropriate, the court stated that it had "[c]onsider[ed] the relative earning capacities of the parties, their ages, disparities in earning capacities and relative *economic situations.*" (Emphasis added.) As to Lyla's particular "economic situation," the trial court found that Lyla had "very limited job skills with a current earning capacity of making no more than a minimum wage." Indeed, the record indicates that Lyla had virtually no available cash, and the trial court specifically noted that she supported herself and her children solely with money from Aid to Families with Dependent Children (AFDC), child support, and student loans. Moreover, the trial court clearly was aware of the implications of its property allocation scheme, according to which Lyla would have to make payments on her student loans.

Therefore, we conclude that the trial court recognized that Lyla needed rehabilitative alimony if she was to remain in the marital residence with her children while supporting herself and continuing her education. The trial court found that during the interim period between the parties' permanent separation and their divorce, Michael had been making the mortgage payments. In light of Lyla's need, it was not an abuse of discretion for the trial court to configure a rehabilitative alimony scheme that required Michael to pay Lyla an amount equal to the mortgage payment for a period of twenty-four months.

2. *The trial court failed to make adequate findings in assessing Michael Myers' ability to pay.*

■ Finally, Michael contends that the trial court erred in failing to make adequate findings about his ability to pay the rehabilitative alimony award. We agree and remand this case for further findings consistent with this opinion.

The trial court's findings of fact contain essentially no discussion of Michael's ability to pay. At two points in the record, the trial court comes close to making a reasoned assessment of Michael's ability to pay. First, it noted that Michael had a "secure" job as a firefighter. Later the trial court found that "[c]onsidering the relative earning capacities of the parties, their ages, disparities of earning capacities and relative economic situations, an award of rehabilitative alimony is supported by the facts of this case." However, the trial court never elaborated on how it concluded that Michael's "economic situation" enabled him to pay $981 per month in alimony.

Moreover, the most specific statement about Michael's financial circumstances was not made by Judge Rene J. Gonzalez, who entered the divorce decree. Instead, it was made by Judge Larry D. Card, in response to Michael's motion to stay the rehabilitative alimony award pending this appeal. Judge Card, who granted a stay of Michael's obligation to pay alimony in excess of $400 per month, found that "Mr. Myers does *not* appear to have sufficient funds on which to live." [2]

At a minimum, the trial court must elaborate on its statement that the $981.00 alimony amount is appropriate in light of Michael's "economic situation." Such an elaboration would be sufficient if it were to contain a discussion of Michael's necessary expenses and an assessment of the sources of funds Michael might use to meet those expenses. This discussion need not include a dollar-by-dollar accounting of Michael's monthly income and expenses; the goal is to determine whether Michael can reasonably assume the obligation of paying the rehabilitative alimony award. However, the trial court should make findings that indicate that it has considered Michael's necessary expenses, including required work-related expenses, [3] as well as the funds Michael could use to meet those expenses. In this case, these funds include Michael's earned income along with the significant tax benefits he can claim for alimony deductions and dependent deductions for the parties' three children. [4]

---

2. Michael has weakened his argument that he cannot pay $981 of alimony each month by failing to appeal the property division. The property division calls for him to pay $981 per month for 26 months, starting upon expiration of the alimony payments. Thus, even if the rehabilitative alimony award were eliminated, the result would be that Michael would begin immediately to pay installments on the property division, an amount equal to the sum that he asserts he cannot afford to pay.

Nevertheless, Michael suggests in the conclusion statement to his brief that he also seeks a reduction in the monthly payments on the property division. In one sentence he states that he should be required "to pay Lyla Myers a reasonable set amount on the property division until the $24,946 he has been ordered to pay Lyla Myers is paid in full."

We conclude that Michael has abandoned any arguments for a reduction in the property division payments because he not only insufficiently briefed the issue, but he also omitted it from his points on appeal. *Braun v. Alaska Commercial Fishing & Agric. Bank,* 816 P.2d 140, 145 (Alaska 1991).

3. For example, Michael claims a monthly uniform cleaning expense that he asserts is mandated by his employer.

4. The trial court determined it to be "fair and equitable that [Michael] shall claim the children as dependents for tax purposes."

## IV. CONCLUSION

We AFFIRM in part and REMAND to the superior court to make additional findings on the appropriate amount of rehabilitative alimony to be awarded, in light of Michael's financial circumstances and ability to pay.