IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July11, 2002 Session

## MONICA L. GOLDBERG v. RUSSELL A. GOLDBERG

**Appeal from the Chancery Court for Williamson County**
**No. 27310     Russ Heldman, Chancellor**

_____

**No. M2001-01442-COA-R3-CV - Filed January 16, 2003**

_____

This is a divorce case involving alimony and property division.  The parties have five children; the oldest is severely handicapped and the three youngest are minors.  The husband is a hospital consultant.  The wife works part-time as a nurse and owns a small business.  In addition to child support, the trial court ordered the husband to pay substantial alimony *in futuro*, and assume approximately ninety-eight percent of the marital debt.  The husband was also ordered to maintain a considerable amount of life insurance to secure his spousal and child support obligations.  On appeal, the husband argues that the award of alimony is excessive, that rehabilitative alimony instead of alimony *in futuro* should have been awarded, that the trial court improperly divided the marital debt, and that the amount of life insurance required was excessive.  We affirm in part and reverse in part.  We affirm the trial court's holding with regard to the division of marital debt and the amount of life insurance, and modify the award of alimony, awarding rehabilitative alimony in a reduced amount.

**Tenn. R. App. P. 3; Judgment of the Chancery Court is Affirmed in Part and Reversed in Part**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for appellant, Russell A. Goldberg

Virginia Lee Story, Franklin, Tennessee, for appellee, Monica L. Goldberg

**OPINION**

Monica L. Goldberg ("Wife") and Russell A. Goldberg ("Husband") were married on April 19, 1980.  At the time of their marriage, Wife had just earned her Registered Nurse license and Husband had just completed a dual master's degree in gerontology and public administration.  The marriage produced five children, the oldest of whom is severely disabled and now lives in a supported group home funded by the state.

During most of the marriage, Husband worked for Columbia/HCA. Toward the end of his employment with Columbia/HCA, Husband earned $120,000 per year plus a potential yearly bonus of $50,000. In October 1997 Husband was laid off and received approximately $160,000 to $200,000[1] in severance pay. This money was used for living expenses and to start a jewelry company for Wife. Husband's experience with a for-profit medical institution such as Columbia/HCA left him with mental health concerns and philosophically unwilling to continue working at for-profit medical institutions. Consequently, he began working for non-profit medical facilities. Husband first worked as a consultant for successive non-profit hospitals in Florida, Alabama, and Washington state. He then obtained a permanent position at Phyve Corporation in Tennessee, but was laid off approximately seven months later. At the time of the trial, Husband worked for St. Mary's Hospital in St. Louis, Missouri, as a consultant, earning $3,350 per week, with a gross average monthly income of $11,106 per month, and net pay of $6,772.67. After Husband was laid off from Columbia/HCA, Wife reactivated her nursing license in order to begin working part time administering allergy shots. She also earned money from the jewelry business, which was operated out of her home. In 2000, Wife earned approximately $28,000.

On August 17, 2000, Wife filed for divorce, citing Husband's inappropriate marital conduct. The next month Husband was ordered to move into an apartment. He was ordered to pay Wife $5,000 per month *pendente lite*. At the *pendente lite* hearing, Wife indicated that her monthly expenses were $7,270.

The trial was held on February 20 and 23, 2001. At the time of trial, Husband was forty-six years old and Wife was forty-two years old. Both parties testified with regard to Wife's earning capacity. Citing his experience in health care, Husband testified that Wife had an earning capacity of $50,000 to $100,000, noting that some hospitals were offering a starting bonus of $10,000. He asserted that he could use his extensive contacts in the health care industry to assist Wife in obtaining full-time, flexible work. In contrast, Wife testified that a person with her experience could only earn between $13.00 and $13.50 per hour, or approximately $27,000 per year. Neither party offered expert proof with regard to Wife's earning capacity.

At the trial, Wife testified that she had revised her calculation of expenses to be $9,175 per month. Wife said that the marital home was worth approximately $390,000 minus real estate commissions and repair fees, and was encumbered by approximately $340,000 in outstanding mortgages. Husband testified that the parties' home was worth $410,000 to $420,000. The proof at trial showed that the parties accumulated $76,984.50 in marital debt, which was mostly comprised of debt consolidation loans, a loan from Husband's brother, and an outstanding IRS debt from 1999. Husband also testified that, at that time, he maintained a life insurance policy in the amount of $300,000. He testified that his bipolar condition and medicine usage would prevent him from qualifying for additional insurance.

---

[1]Husband could not recall the exact amount of his severance package, nor did he produce any record of his severance pay.

Shortly after the trial, on February 27, 2001, the trial court granted Wife the divorce, based on Husband's stipulation of inappropriate marital conduct. The final judgment was entered on May 22, 2001. In the final order, the trial court concluded that Wife was incapable of rehabilitation, and awarded alimony *in futuro*:

> The Court specifically has considered all statutory and all relevant factors in setting alimony in this cause and finds that Wife is incapable of being rehabilitated and therefore alimony *in futuro* is awarded. [Wife] cannot be rehabilitated when viewed in the context of the standard of living in relation to [Husband]. Her rehabilitation is not feasible. Alimony *in futuro* shall terminate upon the death or remarriage of [Wife] or upon [Husband's] death.

The trial court ordered Husband to pay Wife $3,000 per month alimony *in futuro*, and $3,114 per month in child support. In addition, Husband was ordered to maintain $500,000 in life insurance to secure the child support payments, and $100,000 in life insurance to secure the alimony payments. The trial court allocated approximately ninety-eight percent of the $76,984.50 in marital debt to Husband. Husband was ordered to pay Wife $6,300 in attorney's fees. Wife was awarded the marital home subject to the outstanding mortgages. From this order, Husband now appeals.

On appeal, Husband argues that the trial court erred in awarding Wife periodic alimony in the amount of $3,000 per month. He asserts that this amount is excessive and that Wife should have been awarded rehabilitative alimony instead of alimony *in futuro*. Husband further argues that the trial court erred in assigning approximately ninety-eight percent of the marital debt to him, and in ordering him to maintain $600,000 in life insurance to secure alimony and child support payments.[2] Wife asserts that the trial court's order is appropriate and seeks her attorney's fees for this appeal.

Because this case was heard by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the trial court's findings of fact, unless the evidence preponderates against the decision of the trial court. *See* Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Questions of law are reviewed *de novo* without a presumption of correctness. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (citation omitted). In reviewing an alimony award or a division of marital property, the appellate court will not overturn the judgment of the trial court unless the award evidences an abuse of discretion. *See Lindsey v. Lindsey*, 976 S.W.2d 175, 179, 180 (Tenn. Ct. App. 1997). A trial court abuses its discretion when it reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard. *Eldridge v. Eldridge*, 72 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). An order requiring an obligor to maintain life insurance is also reviewed under a standard of abuse of discretion, Tenn. Code Ann. § 36-5-101(g); *Young v. Young*, 971 S.W.2d 386, 392 (Tenn. Ct. App. 1998), as is the

---

[2]The trial court's May 22, 2001 Final Judgment appears to order Husband to maintain $500,000 in life insurance for the child support obligation and $100,000 for the alimony obligation, for a total of $600,000, although the parties, in their appellate briefs, indicate that Husband was ordered to maintain $850,000 in life insurance.

award of attorney's fees. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2002) (citing *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995); *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983)).

Husband first argues that the trial court erred in awarding Wife alimony *in futuro* rather than rehabilitative alimony. Section 36-5-101(d) of the Tennessee Code Annotated, which governs awards of alimony, clearly states a preference for rehabilitative alimony when feasible:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, *be rehabilitated whenever possible* by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). . . .

Tenn. Code Ann. § 36-5-101(d)(1) (2001) (emphasis added). Thus, there is a legislative preference for an award of rehabilitative alimony when possible. *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). The court must first determine if a spouse is economically disadvantaged, and then consider *all* relevant factors enumerated in section 36-5-101(d)(1)(A)-(L),[3] as well as any other pertinent facts, to determine if

---

[3]The factors enumerated in section 36-5-101(d)(1)(A)-(L) are:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(continued...)

-4-

rehabilitation of the disadvantaged spouse is feasible. *Robertson*, 76 S.W.3d at 338; *Crabtree*, 16 S.W.3d at 358. These factors must also be considered in setting the amount of the alimony award. *See Robertson*, 76 S.W.3d at 340. Alimony is not intended to put one spouse on equal footing with the other, or to let the obligee spouse to live in the manner to which he or she was accustomed during the marriage. *Robertson*, 76 S.W.3d at 340; *see Crabtree*, 16 S.W.3d at 359-60.

In *Robertson*, the parties were divorced after twenty-two years of marriage. *Robertson*, 76 S.W.3d at 338. They were in their early forties and had one minor child. *Id.* at 339, 343. The husband earned approximately $60,000 per year working for TVA. *Id.* at 342. During the marriage, the wife had primarily been a homemaker, occasionally doing substitute teaching. *Id.* At the time of the divorce she had recently earned a degree in education and planned to work as a teacher, earning approximately $22,500. To increase her salary, she planned to obtain her master's degree. *Id.* The trial court had awarded rehabilitative alimony for one year. *Id.* at 339. The court of appeals modified this, awarding alimony *in futuro*. *Id.* The court of appeals acknowledged that, after divorce, the parties often cannot maintain their prior standard of living, but concluded that "the *inquiry* as to whether a requesting spouse can be *rehabilitated* must be viewed in the context of 'the standard of living of the parties established during the marriage.' " *Robertson v. Robertson*, No. E2000-01698-COA-RM-CV, 2000 Tenn. App. LEXIS 573, at *11 (Tenn. Ct. App. Aug. 25, 2002) (citation omitted). Utilizing this reasoning, the court of appeals concluded that the wife could not be rehabilitated and should receive alimony *in futuro*. *Id.* at *18.

On appeal, the Tennessee Supreme Court rejected this reasoning. It quoted the alimony statute, which requires consideration of the parties' standard of living, along with numerous other factors. *Robertson*, 76 S.W.3d at 341 n.2. Nevertheless, it said that it disagreed with the court of appeals' conclusion "that the parties' standard of living should be" the standard by which a court must determine whether an economically disadvantaged spouse can be rehabilitated. *Id.* at 340. It "encouraged" trial courts to use means other than alimony to meet the needs of an economically disadvantaged spouse, such as the division of marital property or marital debt. *Id.* at 341. Noting that the parties had substantial marital debt and thus would not be able to attain their prior standard of living, the supreme court simply concluded that the wife should be awarded rehabilitative alimony only, in the amount of $250 per month for two years. *Id.* at 343.

---

[3](...continued)

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (2001).

*Robertson* must be viewed against the backdrop of the supreme court's earlier decision in *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000). In *Crabtree*, the proof showed that the husband earned in excess of $400,000 per year. *Id.* at 356 n.1. The wife worked part time as an accountant. *Id.* at 360. The most optimistic testimony, provided by the husband, was that the wife had the ability to earn between $65,000 and $100,000 per year. *Id.* The trial court ordered both rehabilitative alimony and alimony *in futuro*. *Id.* at 357-58. The court of appeals affirmed the award of both types of alimony, expressing concern that rehabilitative alimony alone would not enable the wife to approximate the standard of living from the parties' twenty-three year marriage. *Id.* at 359. The Tennessee Supreme Court rejected this reasoning, awarding rehabilitative alimony alone, without reference to the parties' former standard of living or the considerable disparity in their earning capacity. *Id.* at 359-61.

From *Robertson* and *Crabtree*, we must conclude that, although the alimony statute refers to the parties' relative earning capacity and their standard of living as factors to be considered, these factors have been deemed of only marginal relevance to the issue of whether the obligee spouse can be rehabilitated. *See* Tenn. Code Ann. § 36-5-101 (d)(1)(A) and (I) (2001). Rather, the focus under both *Crabtree* and *Robertson* appears to be whether the obligee spouse can earn enough money to be self-sufficient, even if at a level far below the parties' former standard of living and even if the earning capacity of the obligor spouse is far greater.

In the case at bar, the trial court concluded that Wife "cannot be rehabilitated when viewed in the context of the standard of living in relation to [Husband]." In light of *Crabtree* and *Robertson*, we must conclude that this finding is erroneous; we hold that Wife is capable of being rehabilitated, and that the award of alimony *in futuro* must be reversed.

Husband also appeals the amount of alimony awarded, arguing that the trial court should not have awarded Wife $3,000 per month. Husband asserts that Wife's need for the funds, coupled with her ability to earn money, as well as his income level, warrants at most an award of rehabilitative alimony in the amount of $1,500 per month for ten years, instead of the $3,000 per month alimony *in futuro* ordered by the trial court. He notes that in setting alimony obligations, the two most important factors to consider are the obligee's need for the funds and the obligor's ability to pay. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (citations omitted). It is erroneous for a trial court to order an obligor to pay an amount of alimony beyond his ability to pay. *See Goodman v. Goodman*, 8 S.W.3d 289, 296 (Tenn. Ct. App. 1999) (citation omitted) (reducing husband's alimony obligation from $2,200 to $1,000 per month, which ultimately reduced his total monthly support obligation from $4,435 per month to $3,234 per month, allowing him to retain just under fifty percent of his disposable income).

In the case at bar, Husband's gross income is $11,106 per month. His net income is $6,772.67. After Husband pays his current child support obligation of $3,114 per month and his alimony obligation of $3,000 per month, he is left with less than $700 per month, or less than ten percent of his income, to support himself. At the time of trial, Wife earned approximately $28,000 per year, or $2,333.33 per month. Wife testified at trial that she could start in a full-time nursing

position at $13.00 to $13.50 per hour. Husband opined, based on his experience in health care, that Wife could earn $50,000 or more per year as a home-based clinical case manager.

Even considering Wife's stated expenses of $9,175 per month,[4] we find that the award of $3,000 per month alimony is excessive and simply beyond Husband's ability to pay. Therefore, we modify the award of alimony to $1,500 per month in rehabilitative alimony for a period of ten years, or upon the death of Wife, if her death occurs before the end of the ten-year period.[5]

Husband next argues that the trial court erred in assigning approximately ninety-eight percent of the marital debt to him. The trial court is afforded wide latitude when distributing the marital property and the marital debt. ***Watters v. Watters***, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997). The division of marital property and marital debt is to be equitable, not necessarily equal. ***See*** Tenn. Code Ann. § 36-4-121(a)(1) (2001); ***Watters***, 959 S.W.2d at 591. When dividing marital property and debt, the trial court must consider the factors set forth in section 36-4-121(c) of the Tennessee Code Annotated. Tenn. Code Ann. § 36-4-121(c).[6] The Tennessee Supreme Court has encouraged

---

[4]We note that Wife's stated expenses at the *pendente lite* hearing were $7,270 per month.

[5]This permits Husband to retain $2,158.67 per month, or approximately thirty-two percent of his net income.

[6]The factors enumerated in section 36-4-121(c) are:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(continued...)

adjusting the division of marital property as a means of meeting the needs of the economically disadvantaged spouse. ***Robertson***, 76 S.W.3d at 341 (citing ***Crabtree***, 16 S.W.3d at 361 n.4; ***Renfro v. Renfro***, 848 P.2d 830, 834 (Alaska 1993)). The ***Robertson*** court stated:

> When practical, . . . a trial court should consider awarding more assets to an economically disadvantaged spouse to provide future support, rather than relying solely upon an award of alimony. When there are few marital assets but a considerable amount of marital debt, a trial court should similarly consider awarding a disadvantaged spouse a lesser amount of marital debt. Careful distribution of the marital property may assist the disadvantaged spouse in achieving rehabilitation in furtherance of the legislative policy of eliminating spousal dependency.

***Robertson***, 76 S.W.3d at 341. Thus, pursuant to the legislative goal of eliminating spousal dependency, it is proper for a trial court to divide the marital property and debt in such a way that helps the disadvantaged spouse achieve financial independence.

Here, the only marital asset whose value was in dispute was the marital residence. Husband testified that the property had approximately $70,000 to $80,000 in equity, while Wife's testimony indicated that the property had approximately $50,000 in equity, minus repairs and real estate fees.[7] Regardless of the amount of equity in the marital home, Wife was apparently granted all of that equity when the trial judge awarded her the house, subject to the outstanding mortgages. Husband is responsible for $75,360, or approximately ninety-eight percent of the marital debt, and Wife is responsible for $1,624.50, or approximately two percent of the debt.

Applying the statutory requirements and caselaw to this situation, we find that the trial court did not abuse its discretion when it divided the marital property and marital debt. In this case, during the parties' twenty-year marriage, Wife primarily raised the parties' children while Husband built his career and enhanced his earning capacity. ***See*** Tenn. Code Ann. § 36-4-121(c)(5). Moreover, Husband's income is at least four times greater than Wife's; thus, his ability to acquire capital assets in the future is much greater than that of Wife. ***See*** Tenn. Code Ann. § 36-4-121(c)(2) and (4). While Husband's debt obligation is considerably higher than Wife's allocated debt, his alimony obligation has been reduced, and as the children grow older, his child support obligations will also be reduced. Therefore, the trial court's division of marital property and marital debt is affirmed.

---

[6](...continued)

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2001).

[7] Wife testified at trial that the house had been for sale for a year and had not been sold. The house was originally listed at $459,000, and had subsequently been reduced to $429,000. The parties owed approximately $341,000 on the home.

Next, Husband argues that the trial court abused its discretion when it ordered him to maintain life insurance in the amount of $600,000. The trial court may require the payor spouse to maintain life insurance in order to secure payment to the payee spouse in the event of the payor's death. *See* Tenn. Code Ann. § 36-5-101(g);[8] *Young v. Young*, 971 S.W.2d 386, 392 (Tenn. Ct. App. 1998). The decision of the trial court regarding such life insurance will not be reversed absent an abuse of discretion. *Id.* at 392. Here, the trial court ordered Husband to maintain $100,000 in life insurance to secure his alimony obligation and $500,000 in life insurance to secure his child support obligation. Husband asserts that he currently maintains a $300,000 policy, and that his medical history would prevent him from economically obtaining additional coverage. At trial, however, Husband offered no proof that he had attempted to obtain additional coverage, or proof that such an attempt had been declined. Based on this record, we cannot conclude that the trial court abused its discretion in ordering Husband to maintain $600,000 in life insurance.[9]

Finally, Wife seeks her attorney's fees on appeal. Here, Wife received the equity in the marital home, and Husband will still pay over sixty-eight percent of his net income in child support and alimony, while maintaining responsibility for a substantial amount of the marital debt. Under all of these circumstances, we decline Wife's request for attorney's fees.

In sum, under *Crabtree* and *Robertson*, we find that Wife can be rehabilitated, and therefore that an award of alimony *in futuro* is not warranted. We also conclude that the amount of alimony awarded exceeds Husband's ability to pay. Therefore, the award of alimony is modified to $1,500 per month for ten years, or upon the death of Wife, if her death occurs before the end of the ten-year period. We affirm the division of marital property and debt, and affirm Husband's obligation to maintain life insurance in the amount of $600,000. Wife's request for attorney's fees on appeal is denied.

---

[8] Section 36-5-101(g) states:

> The court may direct either or both parties to designate the other party and the children of the marriage as beneficiaries under any existing policies insuring the life of either party and maintenance of existing policies insuring the life of either party, or the purchase and maintenance of life insurance and designation of beneficiaries.

Tenn. Code Ann. § 36-5-101(g) (2001).

[9] If Husband has in fact been ordered to maintain in excess of $600,000 in life insurance, the amount required is hereby modified to $600,000.

The decision of the trial court is affirmed in part, reversed in part, and modified as set forth above.  Costs are taxed equally to appellant, Russell A. Goldberg, and his surety, and appellee, Monica L. Goldberg, for which execution may issue if necessary.

 

 

_____
HOLLY KIRBY LILLARD, JUDGE