IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 31, 2011 Session

## CAROL DENICE PETTIJOHN v. PATRICK CARL PETTIJOHN

**Appeal from the Circuit Court for Polk County**
**No. CV-09-088    Lawrence H. Puckett, Judge**

_____

**No. E2010-01255-COA-R3-CV - Filed February 28, 2011**

_____

In this divorce case, the trial court's judgment ended the relatively-long marriage of Carol Denice Pettijohn ("Wife") and Patrick Carl Pettijohn ("Husband"). Husband appeals the trial court's division of the marital property, its award of alimony in solido to Wife, and the duration of the alimony in futuro award. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

D. Mitchell Bryant, Athens, Tennessee, for the appellant, Patrick Carl Pettijohn.

Philip M. Jacobs, Cleveland, Tennessee, for the appellee, Carol Denice Pettijohn.

**OPINION**

I.

Husband and Wife separated in late 2009 after 24 years of marriage and two children. Wife filed for a divorce on the grounds of inappropriate marital conduct and irreconcilable differences. Specifically, Wife complained that Husband's drinking had "created an intolerable environment" and that Husband was "obsessive compulsive to the extent that he . . . caused great mental and emotional anguish" to Wife and their children. Husband denied that he was an alcoholic, suffered from a personality disorder or was guilty of any inappropriate marital conduct. He filed a counterclaim alleging that he was entitled to a divorce based on Wife's inappropriate marital conduct. Mediation was unsuccessful. A

bench trial was held in April 2010. Evidence was presented in the form of testimony from Husband and Wife and the deposition of Wife's physician.[1] At the time of trial, Husband was 49 and Wife was 46. The parties' 19-year-old daughter attended a local community college, and their 15-year-old son was a junior in high school.[2] Both children remained in the marital home with Wife, while Husband was living rent-free in a two-bedroom house owned by his mother.

Two years into the marriage, the parties made a down payment on a home in Polk County that they would share for the next 23 years. Wife's father financed the balance of the purchase price. In 1999, Wife and her sister each received a gift of $10,000 from their father. Wife used her gift to pay the balance on the loan owed to her father.

Both parties started college, but neither finished before entering the work force. Throughout the marriage, Husband worked for Bowater, Inc. By the time of trial, he was earning $98,588.02 a year as a "back tender" or papermaker. Wife also worked, but, with Husband's approval, she left her job six months after their first child was born and became a homemaker; she did not return to the work force until years later when their second child entered pre-school. Over the years, Wife primarily attended to the children and maintained the household, while Husband worked long hours and accepted many overtime shifts. On Wife's return to work, she was employed by the State of Tennessee, Division of Forestry, as a secretary in the tree sales department. Wife's position was seasonal and she was laid off each summer for two months during which time she received unemployment benefits. At the time of trial, Wife earned about $18,000 a year at her secretarial job and received $2,063 in unemployment compensation. According to information in their proposed parenting plans, Husband's current gross monthly income was $9,329 and Wife's was $1,450.

Hard work and savings allowed the family to travel and enjoy recreational activities together – they purchased a boat, a camper, and four wheelers, all without incurring any debt. By all accounts, however, Husband and Wife argued constantly and the marriage ultimately suffered. Husband concluded, "me and her cannot live together under the same roof," while Wife attributed the collapse of the marriage to Husband's beer drinking and demanding personality. Husband added that, despite her asthma and other health problems, Wife continued to smoke – he conceded that he nagged her about her smoking the same way she stayed on him about his drinking. Husband admitted that Wife had asked him to stop drinking "a hundred times," but he didn't want to, "[j]ust like her . . . telling me [to] forget it" when he asked her to go outside to smoke. Husband did not testify to any health problems

---

[1]The deposition of Dr. Greg Riley is not included in the record before us.

[2]The minor child's date of birth is July 29, 1993.

of his own. He described his job as "hot and dirty work" and emphasized that he "worked his butt off," to reach his present position. According to Husband, he was able to work more overtime shifts when he was younger, but had to keep working now to put both children through school.

Wife admitted that Husband was a "hard worker." She credited his efforts, together with her father's generosity, for allowing them to get ahead and pay cash for everything. She conceded that Husband had never missed work or gotten into any criminal trouble as a result of his drinking although she said "he certainly could have." According to Wife, she loved Husband and the divorce was difficult; she felt that Husband had chosen drinking over his family.

The evidence showed that Wife had various health concerns. She suffered from "flare-ups" of rheumatoid arthritis and chronic asthma, and had undergone two back surgeries, most recently in 2005, to repair ruptured disks. Wife also had hypothyroidism, a condition that resulted in fatigue, mood swings, weight gain and depression for which she was prescribed medications including anti-depressants. It was essential for Wife to keep her job in order to keep her health insurance.

At the conclusion of trial, the court granted Wife a divorce, adopted Husband's proposed parenting plan and set Husband's child support obligation at $1,034 a month pursuant to the Child Support Guidelines. With a few significant exceptions, the parties agreed to the value and distribution of the marital assets and there were no marital debts. The total net value of the marital estate was approximately $604,060, but the parties, by agreement, gave certain assets to their children, leaving approximately $481,509 to be divided between them. Marital assets to be divided included Husband's 401(k) account ($216,847.24), a 2002 Malibu Sportster boat ($11,280), a 2000 John Deere tractor ($4,500) and the four wheelers. There were various items used in maintaining the marital property including a wood stove ($200), a kerosene heater ($400), hedge trimmers ($100), a portable air tank ($250), a chain saw ($50), and a bench grinder ($100).

The court awarded each party one-half of Husband's 401(k). Wife received the boat, the wood stove, the chain saw and the air tank, while Husband received the tractor, the four wheelers, the heater, the hedge trimmers and the bench grinder. Excluding their interest in the marital home ($87,500 each), the trial court divided the marital assets as follows: $150,595.45 to Husband and $155,914.04 to Wife. Wife was awarded alimony in futuro of $750 a month, to increase to $1,750 when Husband's child support obligation ceased in May 2011. As particularly pertinent to this appeal, the trial court awarded to Wife, as alimony in solido, Husband's one-half interest in the marital real property.

The trial court set forth its factual findings and conclusions of law in its final decree as follows:

> The assets shall be divided as stated on the . . . Master Asset List. . . . The Court believes that this is an equitable distribution of property with regard to non real property assets.
>
> [Wife] is awarded $87,500 as her equitable interest in the marital residence.[3]
>
> [Wife] is the economically disadvantaged spouse based on the case law.
>
> Dr. Riley's opinion that [Wife's] health conditions are pervasive weighed heavily in the Court's opinion.
>
> [Wife] was a stay-at-home Mother and she received full credit as a homemaker and as the primary caregiver for the children.
>
> [Wife] is granted a divorce from [Husband] on the grounds of inappropriate marital conduct and the Court gave particular weight to Dr. Riley's testimony that confirmed the mental cruelty of [Husband].
>
> Based on the relative fault and the other factors pursuant to T.C.A. 36-5-121 and . . . the fact that [Wife] is the disadvantaged spouse and she needs to have her standard of living raised to that of the marriage, [Wife] is awarded [Husband's] $87,500 equity interest in the marital residence as alimony in solido pursuant to T.C.A. 36-5-102 and the case law contained in [Robertson v. Robertson, 76 S.W.3d 337 (Tenn. 2002)].
>
> [Wife] is not able to be rehabilitated and she need[s] alimony in futuro in the amount of $750.00 until the child graduates from high school in May 2011 and thereafter [Wife] shall receive $1,750.00 as alimony in futuro. Said payment shall be made until [Wife's] death, remarriage, cohabitation or other sufficient

_____

[3]The undisputed value of the home was $175,000.

change in circumstances and the Court shall retain jurisdiction over the same.

Husband timely filed a notice of appeal.

## II.

Husband raises the following issues for this Court's review:

1. Did the trial court abuse its discretion in awarding to Wife Husband's interest in the marital residence as alimony in solido when Wife was also receiving alimony in futuro?

2. Did the trial court abuse its discretion in awarding Wife what was essentially permanent alimony in futuro?

3. Did the trial court abuse its discretion in awarding to Wife the parties' boat?

## III.

A trial court's factual findings are presumed to be correct, and will not be overturned unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review a trial court's conclusions of law under a de novo standard upon the record with no presumption of correctness. *King v. Pope,* 91 S.W.3d 314, 318 (Tenn. 2002); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

A trial court has broad discretion in fashioning a division of marital property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991). It has the same broad discretion with respect to an award of alimony. *See Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). A finding of an abuse of discretion is usually predicated upon the court's application of an incorrect legal standard, unsound reasoning, or reliance upon erroneous facts. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

IV.

A.

Husband contends that in awarding Wife the real property, the trial court simply made an inequitable division of the marital property that it tried to disguise, after the fact, by characterizing the award of his share of the marital real estate to Wife as alimony in solido. He notes that he did not and does not oppose an award of alimony to Wife, but contends that Wife failed to show a need for alimony in solido, over and above her need for alimony in futuro. Husband essentially concludes that, with respect to the overall division of property, equitable should mean equal in this case. Husband requests that this Court (1) set aside the award of alimony in solido and instead (2) award Wife the entire home in the division of the marital property and offset the value of his share against that portion of Husband's 401(k) account awarded to Wife. In this manner, Husband at once challenges aspects of the overall property division as well as the alimony awards.

B.

We begin with the distribution of the marital property. In its bench ruling, the trial court explained its ruling as follows:

> It needs to be equitably divided. I believe both of you have come close to what I would think would be equitable. And I understand there's a lot of investment and emotional attachment to certain items of personal property . . . .
>
> *   *   *
>
> . . . I don't really have to make sure about who gets what as far as satisfying those kind[s] of intangible desires so long as I do what's equitable to get to an equitable bottom line division of property.
>
> *   *   *
>
> [O]f course, on [H]usband's 401(k), I'm going to divide that fifty-fifty. That was the first disputed item . . . .
>
> *   *   *

-6-

The house, it's a $175,000 dollar value. Of course, I'm splitting the house for purposes of the property division, okay? So each would be basically 87,500 each. . . . And [the master asset list] says, while [H]usband doesn't concede [the house], it says just desired by [Wife], but . . . I understand he doesn't think she ought to get $87,500 worth of alimony in solido. I mean, he's taking a position adverse of that, so I understand that's a disputed item. For purposes of just dividing the property, each of them would split that.

Down under the boat, I'm going to let her have the boat, but let him have the [John Deere tractor].

And then over here on the four wheelers, . . . .

*   *   *

. . . I'm going to let him have those, too.

*   *   *

[L]et [W]ife have the wood stove, . . . and the [H]usband the kerosene heater.

. . . [O]kay, [Husband] can have the hedge trimmers, [Wife] the chain saw and portable air tank, and then [Husband] the Craftsman 6 inch bench grinder. And the value on the chain saw I put at two fifty.

*   *   *

All right. Well, I think that's pretty close to the distribution that was contemplated on [Wife's] proposed distribution, I think. Obviously on [Wife's] distribution, . . . possession and ownership of the non-real property assets, she says that's a 52/48 [percent] split, but I think it's more evened up since I made some changes in what she desired.

We are mindful of the well-settled principles applicable to the achievement of an equitable, but not necessarily equal, division of marital property:

-7-

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d at 168.

\* \* \*

In the final analysis, the justness of a particular division of the marital property . . . depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944 at \*4 (Tenn. Ct. App., filed Feb. 9, 1998).

The trial court indicated that it had looked to achieve, as close as possible, a "fifty-fifty division" of the marital estate. To that end, for example, although the parties had listed the marital home in Wife's "column" on the master asset list, the court awarded one-half of the home to each party in the property division. As detailed earlier in this opinion, the property division was nearly equal, with the awards to each party coming within some $4,000 of each other out of a total estate valued at more than $481,000. Moreover, in reality there were few disputed assets for the court to distribute, the most significant of those being Husband's 401(k). As with the house, the trial court stated it would "obviously" divide the 401(k) equally. The remaining items included property which both parties held significant for one reason or another. In our view, the trial court made a great effort to ensure its division of such assets was equitable by dividing the remaining items equally between the parties as near as possible in terms of both dollar amount and the intangible values the parties attributed to them.

On our review of the record, the evidence does not preponderate against the trial court's factual findings in support of its marital property distribution. The trial court's overall division was essentially equal with Wife receiving 50.9% of the marital assets and Husband receiving 49.1%. In short, we conclude that the division was not inconsistent with

-8-

the relevant factors in Tenn. Code. Ann. § 36-4-121(c)[4], and was well within the court's "wide latitude . . . in determining an equitable division of marital property." *See Anderson v. Anderson*, No. E2005-02110-COA-R3-CV, 2006 WL 2535393 at *4 (Tenn. Ct. App. E.S., filed Sept. 5, 2006). We recognize, of course, that Husband's real disagreement is with the trial court's subsequent decision to award his share of the marital home to Wife as alimony in solido. Husband concludes that by awarding the house outright to Wife in this manner, the trial court effectively adjusted the overall property division 69% to 31% in Wife's favor, thereby rendering the entire award inequitable.

C.

After dividing the marital estate, the trial court turned to a consideration of alimony. In this regard, Tenn. Code Ann. § 36-5-121(d)(2005) governs such decisions and states a preference, "whenever possible," for an award of rehabilitative alimony to an economically disadvantaged spouse. However, "[w]here there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, . . . then the court may grant an order for payment of support and maintenance on a long-term basis. . . ." *Id*. Thus, long-term alimony is intended to provide long-term support to an economically disadvantaged spouse who is unable to be rehabilitated. *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2004); *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App.1997). The type and

---

[4]The statutory factors are as follows:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

amount of support, if any, is within the sound discretion of the trial court in view of the particular circumstances of the case and a consideration of the relevant factors set forth in Tenn. Code Ann. § 36-5-121(i). The factors stated in the statute are as follows:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The court may award rehabilitative alimony, alimony in futuro, transitional alimony, alimony in solido *or a combination of these*. Tenn. Code Ann. § 36-5-121(d)(1) (emphasis added). In determining whether an award of alimony is appropriate, courts consider the need of the spouse seeking support and the ability of the other spouse to provide such support to be the most important factors. ***Oakes v. Oakes***, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007).

In the present case, the court awarded Wife alimony in futuro upon finding her to be an economically disadvantaged spouse who was not subject to being rehabilitated. The evidence does not preponderate against the court's finding. According to her income and expense statement, Wife earned a net income of $1,335 a month and had living expenses of $4,186 a month. After deducting certain anticipated, not actual, future expenses, the trial court concluded that Wife needed roughly $1,750 a month in alimony in futuro to maintain her standard of living. Although Husband did not submit an income and expense statement, the evidence at trial indicated that he was well able to pay the ordered amount. He does not argue to the contrary on appeal.

The court further awarded Wife Husband's share of the marital home as alimony in solido based upon the court's consideration of marital fault, the "significant" disparity in the parties' earning capacity, and the need to elevate Wife's standard of living to that achieved by the parties during their marriage. Pursuant to Tenn. Code Ann. § 36-5-121, these are all proper considerations in fashioning an appropriate alimony award. The trial court observed:

> Well, we've talked about her request . . . for half of the equity in the home in terms of alimony in solido. I would say that following [Robertson v. Robertson] I will give her the half of his equity in the house to adjust that disparity that's there in lieu of alimony for that part. But I'm going to make him have to pay her, while the child is at home and she is receiving child support he'll have to pay her $750 a month in addition to the child support, and then his ongoing in futuro monthly payments to her as long as she lives or until she remarries would be $1,750 a

month. That will address the disparity in earning capacity in this case, which is significant.

The evidence does not preponderate against the trial court's findings in support of its award of alimony in solido, and lump-sum alimony. After 24 years of marriage, Wife basically found herself entitled to a half-interest in the marital home and half of the "nest egg" the parties had accumulated toward their retirement. She had little income, however, by which to support herself and no means of obtaining a home comparable to the marital home. Notably, Husband was questioned about Wife receiving the house in the division of property as reflected on the parties' agreed master asset list and testified as follows:

> Q: You do not – I mean, you never told her she's going to have to move out of the house or anything.
>
> A: No.
>
> Q: If she wants it, that's fine. Is that right?
>
> A: You've got two kids there. I'd never do that.

The evidence upon which the trial court based its long-term support for Wife fully supports all aspects of the trial court's alimony decisions in light of the relevant statutory factors. In particular, we think the court properly recognized that Wife was without the means to secure a comparable place to live in the event that Husband chose to force the sale of the home at some future date, perhaps after the children moved out, in order to recover his share of the equity. *See also* Tenn. Code Ann. § 36-5-102 (providing that "[i]n cases where the court orders alimony or child support in accordance with § 36-5-101 and § 36-5-121, the court may decree to the spouse who is entitled to such alimony or child support such part of the other spouse's real and personal estate as it may think proper.").

Further, the trial court properly relied, in part, on the following language from the Supreme Court's decision in ***Robertson v. Robertson***, 76 S.W.3d 337, 341 (Tenn. 2002). In addressing alimony considerations, the Court stated:

> All relevant factors, including those set out in § 36-5-101(d)(1), must be considered on a case-by-case basis to determine the nature and extent of support. Tenn. Code Ann. § 36-5-101(d)(1) Factor (H) requires the trial court to consider the division of marital property when awarding alimony. Tenn. Code Ann. § 36-5-101(d)(1)(H). The division of marital property involves the

distribution of both marital assets and marital debts. We encourage trial courts to use the division of marital property to assist in meeting the disadvantaged spouse's financial needs when feasible. *See Crabtree*, 16 S.W.3d at 361 n.4 ("In cases in which there is a disparity between the relative earning capacities of the parties, a trial court also may consider adjusting the award of marital assets to assist the disadvantaged spouse."); *see also Renfro v. Renfro*, 848 P.2d 830, 834 (Alaska 1993) (establishing a preference for meeting the parties' needs with the division of marital property, rather than with alimony). Section 36-4-121 of the Tennessee Code Annotated does not require an equal division of marital property but an equitable division. When practical, therefore, a trial court should consider awarding more assets to an economically disadvantaged spouse to provide future support, rather than relying solely upon an award of alimony.

\* \* \*

Careful distribution of the marital property may assist the disadvantaged spouse in achieving rehabilitation in furtherance of the legislative policy of eliminating spousal dependency.

Consistent with the teachings of *Robertson*, this court has stated that [w]hen determining how much the economically disadvantaged spouse needs in order to maintain the same or similar standard of living as enjoyed during the marriage, the court should consider the equitable distribution of the marital assets. *Evans v. Evans*, NoW2001-03037-COA-R3-CV, 2003 WL 135053, at \*5 (Tenn. Ct. App. W.S., filed Jan. 14, 2003). In our view, it was appropriate for the trial court to look back to the marital property awarded to Husband and award the house in its entirety to Wife to help defray her needs as the economically disadvantaged spouse in this case.

In this case, the trial court was confronted with a situation involving a great disparity in the parties' respective earnings and a Wife with health problems and no reasonable expectation of improving her economic conditions. Wife, through no fault of her own, was certainly in need of long-term support to supplement the income she was able to earn for herself and to "mitigate the harsh realities of divorce." *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001). In short, a trial court has wide latitude in setting alimony and, in this case, we conclude the awards of alimony in futuro and alimony in solido were supported by the evidence and were not an abuse of the court's discretion.

## V.

In his supplemental brief, Husband argues, with respect to the alimony in futuro award, that the court abused its discretion by failing to limit the duration of the payments. Husband contends that the award is essentially permanent because, he reasons, "it is unlikely Wife will ever remarry or attempt to find a better job, if possible, as that would simply give Husband grounds to . . . seek lower support." Husband suggests it would be appropriate to end the payments after 72 months because at that time he will be 55 years old, the age at which he intended to retire.

As discussed above, the nature, amount, and duration of support is within the sound discretion of the trial court in view of the particular circumstances of the case and a consideration of the relevant factors set forth in Tenn. Code Ann. § 36-5-121(i). *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). By definition, an award of alimony in futuro is intended to provide support on a long-term basis, or until death or remarriage. Tenn. Code Ann. § 36-5-121(d)(3). In the present case, the trial court awarded Wife alimony in futuro after determining that she was a disadvantaged spouse who could not be rehabilitated to become entirely self-sufficient. Although we do not speculate about Wife's future marital status, Husband has conceded that Wife is not subject to rehabilitation because "[a]t this stage in her life, [she] is not going to be able to get a significantly better or high paying job than that which she already has," and it is also "unlikely she could go to school, or be trained" to obtain a "significantly better job." The trial court set the amount and duration of the support by taking into account Wife's reasonable, everyday living expenses, and the substantial disparity in the parties' earning capacities into the future. Under the facts presented, we cannot conclude that the trial court erred in failing to limit Wife's demonstrated need for support to any particular date certain. In this regard, we think the award is more properly viewed as "open-ended" rather than "permanent."

Again, the evidence does not preponderate against the trial court's findings in support of it award of alimony in futuro. As Husband acknowledges, however, "an award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f). Here, the trial court expressly ordered the award to continue subject to Wife's death or remarriage, "or other sufficient change in circumstances . . . ." Accordingly, should circumstances arise affecting Husband's ability to pay the ordered amount, he may return to the trial court to seek an appropriate modification.

VI.

Lastly, Husband contends that the trial court erred in awarding the parties' boat to Wife. He notes that his testimony indicated that he "felt very strongly about receiving the boat, as he spent a great deal of time working on the boat and keeping it up, and . . . used it the majority of the time in the summer." He adds that awarding the boat to him "would make the split of the parties' marital estate even closer to . . . 50/50."

As discussed earlier in this opinion, there were few items of disputed marital property, two of which were the 2000 John Deere tractor and the 2002 Malibu Sportster boat. The parties testified to their past and intended future use of these items and to their significance in their lives. Husband expressed a strong attachment to the tractor – he testified that he had wanted such a tractor since he was 10 years old, Wife knew it, and he had paid $10,000 to finally get one. Similarly, both parties testified to their enjoyment of the boat as a means to spend time on the lake with their children. Ultimately, the trial court divided all of the disputed property essentially equally – including its award of the boat to Wife and the tractor to Husband.

Again, trial courts are afforded wide discretion in dividing the interests of parties in jointly owned property. Equity does not require that the award to each party be equal. ***Batson v. Batson***, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Moreover, it is not this Court's role to tweak the manner in which a trial court has divided the marital property. ***Morton v. Morton***, 182 S.W.3d 821, 834 (Tenn. Ct. App. 2005). Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the statutory factors is consistent with logic and reason, and whether the evidence preponderates against the court's division. ***Jolly***, 130 S.W.3d at 785-86. Having concluded that the overall property division in the present case was equitable, we must conclude that the award of the boat to Wife was not an abuse of discretion.

VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court, pursuant to applicable law, for enforcement of its judgment and the collection of costs assessed below. Costs on appeal are taxed to the appellant, Patrick Carl Pettijohn.

_____
CHARLES D. SUSANO, JR., JUDGE